CLARENCE SMITH V. THE STATE.

No. 21543.   Delivered May 28, 1941.
Rehearing Denied June 27, 1941.

The opinion states the case.

*Eugene Sherrod, Jr.,* of Wichita Falls, for appellant.

*Z. D. Allen,* District Attorney, of Wichita Falls, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State on submission.

BEAUCHAMP, Judge.

The grand jury of Wichita County returned an indictment on June 17, 1938, alleging that Clarence Smith, appellant, did, on the 5th day of June, 1938, unlawfully and with malice aforethought kill Ernest Holmes by striking him with a hammer. The case was tried and resulted in a life sentence in the penitentiary. From the judgment on that trial appeal was taken to this court and the opinion will be found reported in (137 Texas Crim. Rep. 634) 132 S. W. (2d) 264, reversing the case.

The second trial resulted in the death penalty, from which this appeal is presented.

The deceased, who was known generally as Slim Holmes, operated a garage in the colored section of the City of Wichita Falls near and around which it appears there were a great many cafes, a pool hall, barber shop and other businesses operated by negroes. The appellant grew up without parents and has spent considerable part of his time in the State orphans' home at Gilmer. Upon release from the home he had no parents and no fixed place of abode, but is shown to have wandered about for a period of time and had spent six months in prison in the State of Oklahoma for what appears to be a trivial offense. Other than this he had no criminal record.

At the time of the tragedy he was working as a shine boy in the barber shop of his uncle in the same section where Slim Holmes' garage was situated. Holmes' wife being away in Oklahoma, he was sleeping in some kind of living quarters in the garage at nights and was alone in his room there when struck a blow on his head with a hammer, from which he died. Appellant was shown to be in the vicinity at several different places both before and after the discovery of the injury to Holmes, but no one testifies to having seen him in or about

the garage. It was the State's theory that the assailant's object was robbery and that the victim had been in possession of some money during the day. He came into a colored cafe intoxicated and dropped his purse, from which it could be seen that he had some bills. Appellant was present, as well as others, and saw this. A man took charge of the purse and assisted Holmes out of the cafe. This circumstance brings appellant to a knowledge that Holmes had some money.

There is other slight evidence which may, to some degree, cast a suspicion on appellant as the guilty party, but nothing to exclude the idea that someone else than appellant might have perpetrated the crime. The strongest circumstance was his flight during the night.

The State relies for conviction on a confession from appellant which is evidenced by instrument in writing, together with two supplemental statements each in writing, without which it appears the evidence would be insufficient to sustain a conviction. Nevertheless, the circumstantial evidence was utilized by the State for whatever value it may have had before the jury and relied upon to sustain the State in its contention that appellant committed the crime as against his denial thereof and his denial that he had made a voluntary confession. Contradicting the State, appellant took the stand and denied that he had voluntarily signed the statements and claimed that he was forced to do so by a series of threats and punishment by the officers which frightened him into signing whatever they asked. To some degree he is corroborated in the physical facts, particularly by the evidence of the county physician, but every statement he made was denied generally and specifically by the State's witnesses and presented an issue which the jury has passed on contrary to appellant's interest.

The evidence in the case will be referred to only when necessary in the discussion of a bill of exception herein considered.

The State offered the testimony of J. B. Thornton, as reproduced from the former trial, to the effect that he had during the day previous to the tragedy given Slim Holmes sixteen dollars. This evidence was admitted by the court upon proof tending to show that Thornton was not at the time of the trial in the State of Texas and available as a witness, but was in the State of Oklahoma. This evidence was pertinent to the State's

case and was admissible under the statute only upon the condition that oath be made that the witness resided out of the state, (Arts. 749 and 750, Vernon's Code Crim. Proc.) or that he is dead. While we do not find it necessary to discuss all the evidence on the subject, the trial judge found as a fact on his motion for new trial that Thornton was at the time in Wichita County, Texas, and not a resident of the State of Oklahoma. He excuses his act in admitting the testimony, as well as his refusal to grant a new trial, on the ground that the evidence was admitted under the belief that the witness was out of the state.

A study of the evidence which was presented to the court as a basis for the introduction of this testimony reveals facts which would amply justify the trial court in believing that the witness was absent at the time, but there is a lack of evidence of the permanency of his residence elsewhere, likewise, the evidence which was presented on a motion for rehearing was conclusive that the witness was in Wichita County at the very time of the trial, and the court properly found as a fact that he was.

It may be observed that our statute does not permit the introduction of testimony on the belief of the trial court, but upon the existence of a fact, and when it was learned that the court had been misled it then became his duty to correct the error which he could only do by granting the motion for a new trial.

From an opinion by Judge Henderson, in Tippett v. State, 37 S. W. 860, we quote the following pertinent statement with approval:

"Concede that the state had made out a prima facie case for the introduction of the examining trial evidence of the witness, by showing that a year before that time, said witness resided in the Indian Territory, yet, under the peculiar facts of this case, when it was shown that the witness was, at the time of the trial, and had been for some months previous thereto, a resident of Texas, and that this fact might have been ascertained by the use of reasonable diligence on the part of the District Attorney, we believe that the court should have granted the motion for a new trial. The judgment is therefore reversed and the cause is remanded."

When analyzed, we are further of the opinion that the evi-

dence was insufficient to comply with the statutory requirement and that it was error to admit the testimony under the evidence produced. No witness testified positively that Thornton resided in Oklahoma. It was only that he told the witnesses that he was going to Oklahoma; that he wrote a card which was mailed at an Oklahoma post office, but was lacking in that positive evidence which is required to take from the party on trial his right to be confronted with his accusers, as guaranteed to him in the Constitution of the United States, Bill of Rights, Article 6; and also Art. 1, Sec. 10 of the Constitution of the State of Texas.

We quote from Tex. Jur. Vol. 12, page 528, as follows:

"Testimony given at a former trial of the accused or at a legal examining trial, or at an inquest, at which the defendant was confronted with the witnesses, and given an opportunity to cross-examine, may, when properly authenticated, be received against the defendant, where the witness has died or moved beyond the jurisdiction of the court. But the use of such evidence is a departure from the general rule that the defendant shall be confronted with the witness against him and should never be permitted unless it appears that the state has brought itself within the exception to the rule."

Another case definitely in point is Freeman v. State, 30 S. W. (2d) 330; 115 Tex. Crim. Rep. 66, in which Judge Morrow holds that it must be shown the witness was "permanently beyond the limits of the state."

From 18 Tex. Jur. page 198, we quote the following:

"Where the witness is absent from the state his testimony may not be reproduced unless it be shown that he is permanently beyond the limits of the state; merely temporary absence does not render the testimony admissible."

Again it may be stated that the evidence in the case at bar, at most, only showed the temporary absence of the witness from the State of Texas at the time of trial.

Appellant complains of the exclusion of the testimony of Ernest Hill, a negro boy, who was probably the nearest person to the tragedy and the first to discover it. He saw the deceased struggling, apparently unconscious, in and out of a window of his garage and observed the wound on his head. He called the

attention of his companion to the occurrence and was reminded that an officer was nearby. When directed to it the officer radioed for assistance and, at about the time the assistance arrived, Willie Martin approached the witness and engaged in what appears to be exclamations to the effect that he had to do it. He told the witness to call the law. This was soon after the officers had taken Holmes away and while one of them was on the ground investigating the matter. Ernest Hill told the officer what was said by Willie Martin, but it is not clear from the bill just what the officer offered to testify on the subject. It is our conclusion that the testimony of Ernest Hill was admissible and that the evidence of the officer, insofar as it corroborated Ernest Hill as to the things that occurred at that particular time, should also have been admitted in evidence. This evidence was offered as a part of the res gestae. As an introduction to a discussion of the subject we refer to 30 C. J. 169, Sec. 389, from which we copy the following:

"For the purpose of showing that another than defendant committed the crime, evidence of disconnected threats and declarations of third persons is inadmissible, but such evidence is admissible when the threats and declarations are part of the res gestae or form links in a chain of evidence connecting with the crime itself. A similar rule applies to declarations of a third person that he committed the homicide or procured its commission."

See also Underhill, Criminal Evidence, Fourth Edition, page 589.

The first consideration in determining the admissibility in evidence of statements as a part of the res gestae is the question of time. This fact is not always the controlling factor. At least it is not the only factor. In Lewis v. State, 29 Tex. App. 204, 15 S. W. 642, 25 Am. Rep. 720, the court had under consideration statements made by a negro woman to the effect that the accused had slipped up behind her and clinched her and cut her nearly in two. This statement was made by the victim about one and one-half hours after the occurrence and was not offered as a dying declaration, but as a part of res gestae. It was explained by the trial court in qualifying his bill that the victim was an ignorant negro woman, (implying a lack of deliberation) ; that during the entire time she had not conferred with anyone, but had engaged in screaming and moaning, evidently in great pain or fear. It was her first exclamation or direct

statement regarding the occurrence. It was, therefore, considered as much a spontaneous outburst as if it had been committed by someone of a different mind and temperament and intellect immediately after the wound was inflicted. From the opinion of the court approving the admission of the testimony we quote the following:

"In order to constitute declarations a part of the res gestae it is not necessary that they were precisely coincident in point of time with the principal fact. If they sprang out of the principal fact, tend to explain it, were voluntary and spontaneous, and made at a time so near it as to preclude the idea of deliberate design, they may be regarded as contemporaneous, and are admissible in evidence. Foster v. State, 8 Tex. App. 248; Tooney v. State, Id. 452; McInturf v. State, 20 Tex. App. 335; Powers v. State, 23 Tex. App. 42, 5 S. W. 153; Irby v. State, 25 Tex. App. 203, 7 S. W. 705."

This we think is good reasoning and disposes of the question of time element in the case. As we understand the bill, Ernest Hill was approached by Willie Martin amid the confusion and turmoil of that event while all eyes were focused on the scene where a white man had been brutally and seriously wounded in the negro section. Willie Martin's exclamations on the subject appear to have been spontaneous and to have involved himself as the one who committed the crime, which, if believed by the jury, would vindicate appellant.

Judge Hurt dealt with this subject in an exhaustive opinion in the case of DuBose v. State, 10 Tex. Ct. App. Rep. page 230, and we call particular attention to his discussion of the second proposition in that case. The rule laid down in that case has been modified to some extent in that where it is necessary to rely upon circumstantial evidence and the party making the inculpatory statement was in a position where he could have committed the crime, such statement would fall under the rule announced and often followed in the DuBose case (Stone v. State, 98 Tex. Cr. R. 364; 265 S. W. 900.) As observed, the evidence involved in this bill of exception is believed to be admissible under the doctrine of res gestae and is in accordance with the Stone case, supra, which confirms the general idea conveyed by the DuBose case with the limitations mentioned.

As further evidencing the pertinency of the testimony excluded, we note the following statement in the court's charge at the conclusion of paragraph 25:

"And, in this connection, you are instructed that you cannot convict the defendant on his alleged confessions alone, if any, and unless you believe from the evidence beyond a reasonable doubt that there are such extrinsic corroborating facts and circumstances in evidence, as will, taken in connection with such confessions, if any, produce conviction in your mind of the defendant's guilt, you will acquit him."

If the jury is to be charged to consider all the surrounding facts and circumstances, certainly the court was in error in excluding the evidence of Willie Martin and of the officer, as complained of in the bill of exception, such being a part of the res gestae.

Appellant complains in his bill of exception number twelve of the refusal of the court to permit the cross examination of an assistant district attorney who, after testifying as to the circumstances under which the confession was prepared and signed, was asked the question: "Did you try to get the defendant to confess the crime?" The State objected to this and we are unable to appraise the value of the objection as being pertinent. The question was direct and to the point on cross examination. We do not conceive any necessity for a discussion of the authorities. The court committed error in sustaining the State's objection.

In addition to this, the bill as presented certifies error. This appears to be an instance in which the trial court has overlooked the distinguishment to be made between a statement as grounds for objection and a statement of harm resulting from the admission of the evidence. The case of Dykes v. State, 121 S. W. (2d) 603, has a very pertinent and enlightening discussion on this subject and is authority for the position which we take with reference to the approval of bill of exception number twelve.

We believe that this sufficiently discusses the issues of the case at this time. When the case is tried in observation of the rules herein applied, the other issues presented may appear in a different light.

For the reasons stated, the judgment of the trial court is reversed and the cause remanded.

ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

The State has presented an able motion for rehearing combatting the conclusions expressed in our original opinion.

The present writer is uncertain as to the proper procedure if the trial court upon a sufficient predicate has permitted the reproduction of the evidence of a witness upon the ground that he is permanently beyond the limits of the State, but it is shown upon the hearing of the motion for new trial that in fact he was in the State at the time of the trial, hence no opinion is expressed upon that point, and it is not further discussed as the question will not arise in the same form upon another trial.

It is believed that the reversal ordered was the proper disposition of the case.

The motion for rehearing is overruled.