LAWRENCE A. WELLS V. STATE.

No. 24252. February 23, 1949.
Rehearing Denied May 11, 1949.

*W. P. McLean* for *McLean & McLean,* Fort Worth, for appellant.

*Stewart W. Hellman,* Criminal District Attorney, *Leo Brewster,* Special Prosecutor, *Martin, Moore & Brewster, Beale Dean,*

and *Alfred M. Clyde,* Fort Worth, and *Ernest S. Goens,* State's Attorney, Austin, for the state.

BEAUCHAMP, Judge.

The appeal is from a conviction for murder with malice, with a sentence of thirty-five years in the penitentiary.

Appellant is alleged to have shot and killed J. L. Montgomery on the 11th day of August, 1947. The facts show that appellant was a tenant in a business building belonging to deceased; that he was engaged in running a domino hall, while deceased had a package store and probably other businesses in the same block but on a different street. They had had differences on more than one occasion because deceased would raise the rent above what appellant thought he should. He seemed to have the idea that he was being imposed upon, though it was admitted that other tenants in the same building had the same raise in rents. Appellant complained about the attitude of the deceased and the manner in which he approached appellant about raising the rent and arguments between them had taken place in the presence of others. Threats made by deceased had been communicated to appellant. Following some discussion of the matter in the afternoon or early evening, appellant went to his home, procured a shotgun, returned and parked his car near the front of the package store. Deceased was either at the front or came as appellant was getting out of his car. According to appellant's theory the deceased made a play for his gun and he shot in self-defense. The issue on this subject was presented to the jury.

The first contention made is that the indictment should have been quashed because it did not contain the correct name of deceased. The evidence shows that his name was Robert Clyde Montgomery, but it also shows that for convenience in getting his mail he had adopted the initials of J. L. to distinguish him from his father. He had gone by that name much of the time and signed a will by the name of J. L. Montgomery, under the undisputed evidence in the case. The action of the trial court was proper.

A number of special charges were presented after the court's first draft of the main charge and complaint is made because of his refusal to give them. We have considered all such charges and, in view of the amended charge which was given to the jury, we find no error. There are also numerous objections to the court's charge as given. These have been analyzed at great

length. No serious question of law is raised and we see no point in discussing them.

Appellant's Bill of Exceptions No. 6 complains of the admission in evidence of the testimony of James E. Wood as to his conversation with appellant immediately following the shooting, the grounds being that he was under arrest. Wood was a policeman. While driving along the street near the scene of the tragedy, he saw a large crowd of people going in that direction and stopped to investigate. The testimony includes statements made by appellant but it seems perfectly clear that they were made before the officer had arrested him. The bill fails to show any act of retention by the officer until after he had made all of the statements introduced in evidence. To the contray, it is stated by the officer that he then took charge of him—after the statements. An examination of the statement of facts, for the purpose of appraising the bill, verifies this.

Bill of Exceptions No. 12 complains of the refusal of the court to discharge the jury and declare a mistrial because of an alleged separation from each other by members of the jury. Under the court's qualification he found that no such separation took place. This court is bound by the qualification under the facts.

Bill of Exceptions No. 13 complains of the ruling of the court in permitting J. F. Greathouse, an attorney, to testify in the case after having been in the court room during the progress of the trial. The evidence given by this witness related to the facts of his drawing the will which had been introduced in evidence, for the proper purpose of showing that the deceased signed his name as J. L. Montgomery. The attorney testified to this. It is a matter without dispute in the record. The trial court, in his discretion, permitted this additional evidence to be introduced. We think he was within his rights in doing so.

Bills of Exception Numbers 21, 22, 23, 24, and 25 complain of the argument of Mr. Leo Brewster, the special prosecutor, and of Mr. Al Clyde. The statements made by these prosecutors were practically to the same effect. Objection was taken at each time and the objection was sustained by the trial court who instructed the jury not to consider them. The question then is whether or not the statements are so inflammatory as to require a reversal of the case. The defense, for some reason not apparent to this court, called a doctor as a witness in behalf of the defendant who had been his physician through a great many years. He told of his physical condition and pronounced

him mentally sound. He described a long series of treatments of appellant for syphilis. He had given him the Wasserman test on several occasions. At times it had showed positive and at other times showed negative. As the doctor described it, the disease had brought about a serious condition of the liver and also a spinal column trouble which the doctor said was unfortunately progressive and would never be better. Appellant testified in his own behalf and complained of such trouble even up to the time of the trial and mentioned his syphilis. The defense also introduced much evidence showing the gambling connections and operations of deceased through the years, all of which was calculated to convey to the jury the idea that he was a character not to be admired.

In their argument now under discussion the attorneys referred to the terms of the will which, as they saw it, would show that deceased was a man who was charitable and not altogether bad. Mr. Brewster, who made the opening argument, asked what would be in the will of appellant and if he would consign his syphilitic body to the state. Such argument was improper. It was uncanny in view of the effort to secure a death penalty as the jury's verdict. It demonstrated a lack of caution on the part of the attorneys, both of whom have had long experience in prosecutions. Following this, disregarding the court's ruling, in the closing argument for the prosecution, Mr. Clyde twice referred to the syphilitic body of appellant. Such argument was dangerous and has raised before us a question that is not without its difficulties.

The harmful effect of inflammatory argument is too frequently before this court. The trial judge in the instant case did all that any judge could do to avoid error. Such argument would have, under some circumstances, required the reversal of the case by this court, regardless of the ruling of the trial court. It has always been the rule, however, that the harmful effect of argument must be appraised in view of all of the circumstances of the case. It was said by Judge Morrow, in Todd v. State, 93 Tex. Crim. Rep. 553, 248 S. W. 695, that: "To cause a reversal, the argument must not only be improper, but of a material character, and calculated, under the circumstances of that particular case, to injure the accused on trial." A number of authorities are cited by him in support of such statement.

This ruling was discussed by Judge Hawkins in his opinion on motion for rehearing in Silver v. State, 8 S. W. (2d) 144, at page 148, as follows:

"Another thing that must be borne in mind is that the facts and surroundings of the particular case should be looked to in determining the effect of an argument complained of. The same language under a certain state of facts might be highly prejudicial, and not so regarded under other circumstances. This is illustrated in Todd v. State, 93 Tex. Cr. R. 553, 248 S. W. 695; Coates v. State, 98 Tex. Cr. R. 314, 265 S. W. 891; Vineyard v. State, 96 Tex. Cr. R. 401, 257 S. W. 548. Where deliberate, useless, planned murder is committed in the perpetration of robbery, and the death penalty merited under the facts, we would hesitate long before attributing the assessment of such punishment to an argument. Under all the circumstances of the present case in connection with the qualification of the court on the bill in question, we think the motion for rehearing should be overruled, and it is so ordered."

It will not require a very close analysis of all the testimony in the case to find a basis for the statements which the attorneys made, useless as they must have been in the consideration of any controverted issue. The doctor testified to a condition that was serious, effected appellant's life so that he was tired at all times, and brought him frequently to his physician for treatment. He said it would be progressively worse. Appellant himself brought the trouble down to the very date of the trial. No new fact concerning him was stated by the attorneys because such evidence was found in the record. This evidence was before the jury. It is a simple deduction that under all of the facts of this case such statement by the attorneys was weak in comparison to the detailed evidence presented by appellant from the lips of his own physician. It would have been exceedingly inflammatory under some circumstances, while in the instant case we cannot conceive of anyone so viewing it. Thus we have an illustration of the wisdom of the rule announced in the above quoted opinions which have been followed by many decisions, and which were likewise based upon a long line of authorities.

Complaint is also made because Mr. Clyde, the district attorney, over appellant's objection, read to the jury the will of deceased. We think the objection to this came too late. It would have been proper at the time the will was offered in evidence. There was no objection made then and, the evidence being before the jury, it was not error to permit it to be read by the attorney. Furthermore, we can see nothing inflammatory or otherwise harmful. Counsel can not sit by and permit immaterial evidence to be admitted from the witness box and then com-

plain that it was called to the attention of the jury by the other side.

All of the questions raised in the case have been considered and we think they are without merit. It would add nothing to the jurisprudence of the state and could give no relief to appellant if we should discuss them at greater length. We find no reversible error and the judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant's attorneys fail to agree with the reasoning set forth in our original opinion and ask for a review of practically all that was said therein, alleging error in our disposal thereof.

Again, complaint is made of the testimony of Officer Wood, who testified to seeing a commotion in a street of the City of Fort Worth and two men struggling over a shotgun, the barrel of which was warm as though recently fired. The officer came up and grasped the gun and took charge thereof. Mr. Key, who had hold of the gun, as did appellant also, said, "He is the one that shot him," and pointed to appellant; and appellant then said, "I just killed the son-of-a-bitch." This is complained of because it is contended tht appellant was then under arrest. The testimony, however, shows that the officer knew nothing about any killing until this statement was made, whereupon he placed appellant under arrest. The witness said, "After the defendant told me what he did, I took him in charge." Mr. Key, the man who was struggling with appellant over the gun, was present at the killing and had hold of the gun, pointing it upward, when appellant fired the third and last shot. He still had hold of it together with appellant when the officer took the gun. We think the statement complained of was admissible, there having been no arrest until such statement was made. We also think such statement was res gestae of the transaction and was properly admitted, the same taking place at the scene and immediately after the deceased had been shot.

Complaint is also made of the argument of the attorneys representing the state, and especially so of Mr. Cyde's statement relative to the state's witness, A. C. Howerton. These remarks were ill advised and should not have been utilized. However, in reading the trial court's qualification to such bills, we find appended thereto excerpts from the argument of appel-

lant's attorneys that seem to show that Clyde's remarks were called forth by the argument of each of appellant's attorneys and invited thereby. It is the duty of the attorneys on both sides of a controversy to confine their remarks to the record as a basis therefor; such being a rule that works both ways, if one, by an excursion out of the record, violates such rule, he can hardly be allowed to justly complain of his opposing counsel indulging in the same tactics relative to the same subject. We think the remarks of Mr. Clyde to have been invited, and while not approving same, we see no error shown therein, especially in view of the trial court's instruction to disregard the same.

We adhere to the views expressed in our original opinion, and the motion will therefore be overruled.