Jesse Oliver GRAHAM, III, Appellant,

v.

The STATE of Texas, Appellee.

No. 44680.

Court of Criminal Appeals of Texas.

Sept. 25, 1972.

Rehearing Denied Nov. 15, 1972.

Phil Burleson, James A. Mills, Jr., Dallas, (On Appeal Only), for appellant.

Henry Wade, Dist. Atty., and Edgar A. Mason, Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

This is an appeal from a conviction for murder. Punishment was assessed by the jury at thirty years.

The record reflects that appellant shot and killed Mrs. Mary N. Crawford with a .22 caliber rifle in Dallas during the early morning hours of April 14, 1969. The evidence showed that appellant and his fiancee, Sherri Crawford, were at appellant's home on the night of April 13, when Sherri's mother, Mary N. Crawford, began beating on the front door of the house. Both appellant and Sherri Crawford testified that they did not then "recognize the person who was beating on the door." Appellant stated that he repeatedly warned the person to stop beating on the door or "he'd shoot." When the banging failed to stop, he pushed the barrel of his rifle through one of the small glass panes of the front door and fired what he described as a warning shot. The bullet from this shot struck Mrs. Crawford in the middle of her forehead and subsequently caused her death.

Following the shooting, the appellant was observed as he stood in the street holding his rifle by D. H. Hickman, a Dallas police officer, who was patrolling the area by automobile. Officer Hickman testified that he stopped his patrol car close to where the appellant was standing and asked him several questions. After receiving answers to these questions, the officer got out of his patrol car and made a cursory investigation of the scene, at the conclusion of which he placed the appellant under arrest. Appellant contends the court erred in admitting the following questions and answers as testified to by Officer Hickman:

"Q   Tell the jury what he said.

"A   I asked him, 'what's the matter,' and he said, 'I just shot a woman in my front yard.'

"Q   All right, what happened next?

"A   I asked him, 'Was she a prowler or what?' And he answered no.

"Q   What did you ask him next?

"A   I said, 'Do you know who she is?' and he said, 'Her name is Crawford.'

"Q   What happened next?

"A   Well, at that time, I got out of my car and I stood up beside him and I said, 'You'd better let me have that,' referring to the rifle he was holding.

"Q   Did you ask Jesse Graham why he shot her?

"A   At that time?

"Q   Yes.

"A   Yes.

"Q   What did he say?

"A   He said, 'I meant to kill her.'

"Q   All right, did you take the rifle from his possession at that time?

"A   After I said, 'You'd better let me have that,' he gave me the rifle without any resistance."

\*   \*   \*   \*   \*   \*

"Q   Where did you go next?

"A   I looked up into the yard and I couldn't see anything and I said, 'Where is she?'"

\*   \*   \*   \*   \*   \*

"Q   All right, and what did he say at that time?

"A   He pointed toward the porch and said, 'There she is by the porch.'"

Officer Hickman then proceeded to the porch, where he observed Mrs. Crawford's wound and noted that "she was still breathing." Hickman returned to his patrol car and placed two calls on his police radio, one requesting an ambulance and one requesting additional police assistance. He then picked up a first aid kit from his car and ran back to the body, made a closer examination and determined that he could not render her any aid. He returned to where the appellant was standing and told him, "he was under arrest for assault with intent to commit murder."

Appellant contends that the foregoing testimony by Officer Hickman should not have been admitted into evidence under the res gestae rule as there was not a sufficient showing of spontaneity to justify its admission.

Generally, three requirements must be met before evidence can be admitted under the so-called "true res gestae rule." There must have been an exciting, emotionally stimulating or physically painful event,[1] the admission or assertion must have been made so soon after the occurrence that the declarant is still in the emotional grip of the shocking event, and the assertion must relate to the event before evidence can be

1.   McCormick & Ray, Texas Evidence, § 915 (2d ed. 1956).

admitted under this exception.[2] The State fully developed the exciting and emotionally stimulating event but failed to establish the period of time between the event and the assertion and did not develop the emotional state of the declarant when he made the admission. Nevertheless, the statements were still admissible under other grounds.

■■ If the accused was not under arrest or in confinement at the time of making an incriminating statement or declaration, the statement is ordinarily admissible in evidence against him. Miller v. State, Tex.Cr.App., 396 S.W.2d 128; Davis v. State, 168 Tex.Cr.R. 588, 330 S.W.2d 443. Thus Officer Hickman could testify to statements made by the appellant before he was actually arrested. Nixon v. State, Tex.Cr.App., 406 S.W.2d 445; Wells v. State, 153 Tex.Cr.R. 331, 220 S.W.2d 148.

Appellant further contends that the statements were erroneously admitted into evidence because he had not been warned of his rights in accordance with Article 15.17, Vernon's Ann.C.C.P., and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694. It is clear from the record that such statements were made during the investigatory process as a part of the general on-the-scene questioning by a police officer who had encountered a person on the public streets under suspicious circumstances.[3] The statements were elicited prior to arrest and were not the result of a custodial interrogation. Therefore neither the statute nor *Miranda* is applicable. Evans v. State, Tex. Cr.App., 480 S.W.2d 387; Calhoun v. State, Tex.Cr.App., 466 S.W.2d 304. See Hoover v. State, Tex.Cr.App., 449 S.W.2d 60; Bell v. State, Tex.Cr.App., 442 S.W.2d 716;

Robinson v. State, Tex.Cr.App., 441 S.W.2d 855.

Appellant contends the court erred in refusing to direct the State to produce the transcript of the grand jury testimony and the statements of certain witnesses.

■ In Garcia v. State, Tex.Cr.App., 454 S.W.2d 400, it was stated that the accused must demonstrate a particularized need for such testimony to outweigh the traditional policy of grand jury secrecy. See Reed v. State, Tex.Cr.App., 456 S.W.2d 393; Polk v. State, 476 S.W.2d 330; Bryant v. State, Tex.Cr.App., 423 S.W.2d 320. The appellant having failed to demonstrate a "particularized need" for the production of grand jury testimony in the instant case, the court was not in error in refusing to grant such request.

At the conclusion of the State's case (guilt stage), appellant filed a motion requesting the court to allow him to call counsel for the State out of the presence of the jury to determine if the State had statements of witnesses not called by the prosecution. At the hearing on such motion, counsel for State testified that the State had affidavits in its file from Sherri Yvonne Crawford, Robert H. Graham and Deborah Bolt, all of whom were present at the time in question. Sherri Crawford, wife of appellant at the time of the trial, was later called by appellant to testify. The record reflects that Robert H. Graham, brother of appellant, had married Deborah Bolt prior to the trial. The court denied appellant's request to direct the State to produce the affidavits. The affidavits were made a part of the record at the motion for new trial. Appellant urges that the affi-

2. Smith v. State, 142 Tex.Cr.R. 349, 152 S.W.2d 751; Holman v. State, 92 Tex. Cr.R. 364, 243 S.W. 1093; Patterson v. State, Tex.Cr.App., 458 S.W.2d 658; Bennett v. State, Tex.Cr.App., 382 S.W. 2d 930; Oldham v. State, 167 Tex.Cr.R. 644, 322 S.W.2d 616.

3. In Miranda, the Court said that its decision was "not intended to hamper the traditional function of police officers in investigating crime . . . General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding." 384 U.S. at 477, 86 S.Ct. at 1629.

davit of his brother corroborates and exonerates him.

Written statements of witnesses are specifically excluded from discovery under the provisions of Art. 39.14, V.A.C.C.P.[4]

The record does not reflect that the affidavits were used in any manner before the jury so as to bring into play the "use before the jury" rule. Campos v. State, Tex. Cr.App., 468 S.W.2d 81; Harris v. State, 172 Tex.Cr.R. 421, 358 S.W.2d 130; Jackson v. State, 166 Tex.Cr.R. 348, 314 S.W. 2d 97.

Sherri Crawford Graham was called by appellant to testify. No attempt was made by the State to impeach her with a prior statement.

■ None of the persons named as having made affidavits was called by the State to testify. Thus the rule announced in Gaskin v. State, 172 Tex.Cr.R. 7, 353 S.W. 2d 467, allowing inspection by defendant of previous statement of State's witness was not applicable.

Appellant cites Means v. State, Tex.Cr. App., 429 S.W.2d 490, where this Court discussed the decisions relating to failure of prosecution to disclose evidence which may exonerate the accused. In Means v. State, supra, it is pointed out that a case by case judgment must often be made in determining the standard set forth in Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217. The test applied by the United States Supreme Court in Napue was whether the testimony "may have an effect on the outcome of the trial."

Under the circumstances of the instant case, we fail to find that the allegedly suppressed evidence would have affected the determination of appellant's guilt or punishment imposed.

■ Further, no showing has been made by appellant that he did not know what his brother's statement contained. As pointed out in Means v. State, supra, reversible error is not shown unless appellant has shown that he did not have knowledge of the facts contained in the allegedly suppressed evidence.

We reject appellant's contention that the court erred in not granting his motion to direct the State to produce the transcript of the grand jury testimony, and the statements of certain witnesses.

Appellant complains of the following cross-examination of appellant's father, by the counsel for the State, concerning a prior conviction:

"Q  Mr. Graham, you are the one and the same Jesse O. Graham that was duly and finally convicted in Dallas County, for the offense of theft on March 4, 1969?

"A  No, sir.

"Q  That is not you?

"A  No, sir."

■ No objection was made to the prosecution's asking of these questions. No error is shown. Alexander v. State, Tex. Cr.App., 476 S.W.2d 10; Bitela v. State,

---

4. The pertinent provision of Article 39.14, V.A.C.C.P., provides: "Upon motion of the defendant showing good cause therefor and upon notice to the other parties, the court in which an action is pending may order the State before or during trial of a criminal action therein pending or on trial to produce and permit the inspection and copying or photographing by or on behalf of the defendant of any designated documents, papers, written statement of the defendant, (except written statements of witnesses and except the work product of counsel in the case and their investigators and their notes or report), books, accounts, letters, photographs, objects or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action and which are in the possession, custody or control of the State or any of its agencies."

Tex.Cr.App., 463 S.W.2d 738; Mitchell v. State, Tex.Cr.App., 455 S.W.2d 266; 5 Tex. Jur.2d Appeal and Error–Criminal, § 437. Additionally, the appellant did not attempt to show that the questions were asked in bad faith. See Keel v. State, Tex.Cr.App., 434 S.W.2d 687.

■ Appellant also complains of the trial court's refusal to grant his requested charge on negligent homicide. The defense raised the issue of accident and the court instructed the jury that if the killing was the result of an accident to acquit. The exact same contention was only recently before this Court, in Smith v. State, Tex.Cr.App., 470 S.W.2d 696, 697, wherein it was held that "in such a situation the court need not charge the jury on negligent homicide." Shelton v. State, Tex.Cr.App., 367 S.W.2d 867; Beasley v. State, 171 Tex.Cr.R. 115, 346 S.W.2d 123. See also Simmons v. State, 145 Tex.Cr.R. 619, 170 S.W.2d 742.

■ The appellant complains that the jury argument of the State was improper. Nine arguments of the State are grouped together under one ground of error. Objection was made to one of the statements but not to others now presented for review.

Article 40.09, Section 9, Vernon's Ann. C.C.P., provides that the appellate brief shall set forth separately each ground of error of which the defendant desires to complain on appeal, and each ground shall refer to the ruling of the trial court or other proceeding in such a way as that point of objection can clearly be identified and understood by the court.

The arguments complained of are not set out separately and are not properly before us for review. Fausett v. State, Tex.Cr. App., 468 S.W.2d 92; Flanagan v. State, Tex.Cr.App., 465 S.W.2d 755.

No reversible error has been shown.

The judgment is affirmed.

Opinion approved by the Court.