

# NUMBER 13-08-315-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

LLEWELLYN SCOTT,                                                                  Appellant,

v.

THE STATE OF TEXAS,                                                               Appellee.

### On appeal from the 329th District Court
### of Wharton County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Vela

Appellant, Llewellyn Scott, was convicted by a jury as a habitual-felony offender

for possession of more than 400 grams of a controlled substance (codeine),[1] possession

of a controlled substance with intent to deliver 200 grams or more, but less than 400

---

†ex. HEALTH AND SAFETY CODE §§ 481.102(3)(A), 481.115(a), (f), a first degree felony.

grams, of Alprazolam (Xanax),[2] and tampering with physical evidence.[3] The trial court imposed concurrent seventy-five year imprisonment terms for each offense as punishment. Scott raises six issues for our review. We affirm.

## I. BACKGROUND

The evidence adduced at trial showed that on July 29, 2007, while patrolling U.S. Highway 59 in Wharton County, Texas, Trooper Jose Mena stopped a Honda because its window tinting was "too dark." Trooper Mena's patrol car had a "mobile vision camera," and the trooper carried a microphone in his pocket, which recorded audio and video of the events that occurred during and after the stop. When Mena approached the car, he smelled the odor of burnt marihuana. Scott was one of four people inside the car and was sitting behind the driver, Tamira Holly, his girlfriend. Calvin Fuller was sitting next to Scott, and Brittany Daniel was sitting in the front-passenger seat. Upon request, Holly exited the vehicle and told Trooper Mena that she was its owner.[4] Fuller, who was holding a Styrofoam cup, also exited the car when asked. Trooper Chauvin, who had been called in as a backup and had arrived at the scene, smelled the contents of the cup and detected codeine. Chauvin then saw Scott, who was holding a Styrofoam cup, dump the cup's contents on the ground next to the vehicle and on its floorboard. Believing Scott to have tampered with evidence, Chauvin arrested Scott. After the arrest, the officer found a marihuana cigar in Scott's shoe. Chauvin removed Scott from the car and handcuffed him. At that time, Scott made an inaudible statement. The videotape reflects that Scott did not make this statement in response to any interrogation by anyone, and Trooper Mena

---

[2]*Id.* §§ 481.104(a)(2), 481.114(a), (d), a first degree felony.

[3]TEX. PENAL CODE ANN. § 37.09(a)(1), (c) (Vernon Supp. 2008), a third degree felony.

[4]The evidence later showed that Holly and Scott jointly owned the vehicle.

testified that he had not asked Scott any questions prior to Scott's making the statement.

Trooper Mena then asked Scott for his identification, and Scott replied, "in my pocket." Trooper Mena asked Scott how much money he had on his person, and Scott replied, "about a thousand dollars." The Honda's four occupants were then taken to a Department of Public Safety ("DPS") substation where Scott told Trooper Mena, "Excuse me, sir. Nobody knows nothing about [inaudible] in the car but me." The videotape reflects that Scott did not make this comment in response to interrogation by anyone. Trooper Mena asked Scott what he meant by the comment. Scott did not respond to Trooper Mena's remark. Shortly thereafter, Scott voluntarily stated, "Nobody knows nothing but me." Trooper Mena then read Scott his *Miranda* warnings.[5]

The troopers searched the Honda and found an A&W cream soda bottle and a Big Red soda bottle in its back seat. The cream soda bottle was three quarters full and contained codeine. In the trunk, the officers found a tire-sealant canister with a false bottom. They unscrewed the bottom and found 1,380 pills of Alprazolam, or Xanax.

Scott testified at trial that he had been smoking marihuana that day, and the marihuana cigar found in his shoe belonged to him. He explained that when the car stopped, he threw some marihuana out the window. He denied that the Styrofoam cup he was holding contained codeine, and denied that he threw out its contents. He stated that he had a prescription for codeine but "wasn't able to obtain it due to the circumstances." He also testified that he had a prescription for Xanax, and that he took it for "anxiety". He maintained that he never possessed the tire-sealant canister, but had seen it in Holly's house, and that it belonged to her.

---

[5] *See Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966).

Holly executed an affidavit, wherein she accepted "full responsibility for any illegal substance found that wasn't on Llewellyn Scott's person." The evidence also showed that Holly had a prescription for Xanax.

Scott also testified that he had been convicted of unauthorized use of a motor vehicle in 1995, and that he had two convictions for possession of a controlled substance.

## II. DISCUSSION

### A. Admissibility of Oral Statements

In his first issue, Scott argues that the trial court erred in admitting his oral statements because: (1) he made them prior to receiving his statutory warnings; and (2) the statements were not properly recorded pursuant to article 38.22 of the Texas Code of Criminal Procedure. When considering a trial court's ruling on the admission of evidence, we must determine whether the trial court abused its discretion. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's judgment if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009).

#### 1. Applicable Law

When a suspect is in custody, law enforcement must comply with procedural safeguards in order to protect the suspect's privilege against compulsory self-incrimination under the Fifth Amendment. *Hollis v. State*, 219 S.W.3d 446, 469 (Tex. App.–Austin 2007, no pet.) (citing *Rodriguez v. State*, 191 S.W.3d 428, 447 (Tex. App.–Corpus Christi 2006, pet. ref'd)). Pursuant to these safeguards, before any custodial interrogation occurs, law enforcement must provide the appropriate *Miranda* warnings. *Id*. Article 38.22 codifies both *Miranda's* system of protecting a suspect against self-incrimination and its distinction

between voluntary statements and compelled confessions. *State v. Waldrop*, 7 S.W.3d 836, 838 (Tex. App.–Austin 1999, no pet.); *see* TEX. CODE CRIM. PROC. ANN. art. 38.22; *Stahl v. State*, 970 S.W.2d 682, 690 (Tex. App.–Dallas 1998, pet. ref'd).

Article 38.22 sets forth the various requirements that the State must meet before a statement made by an accused as a result of custodial interrogation will be admitted at trial. *Nguyen v. State*, No. PD-0888-08, 2009 WL 1873488, at *4-5 (Tex. Crim. App. July 1, 2009). These are:

(1) "an electronic recording" of the statements must have been made;[6]

(2) "prior to the statement but during the recording the accused [was] given the warning in Subsection (a) of Section (2) . . . and the accused knowingly, intelligently, and voluntarily waive[d] any rights set out in the warning;"[7]

(3) under section 3(a), it must be shown that "the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered;"[8]

(4) there has been an identification of all the voices on the recording;[9] and

(5) defense counsel was given "a true, complete, and accurate copy of all recordings" at least twenty days "before the date of the proceedings."[10]

Strict compliance with Section 3(a) is required; therefore, for an accused's statement to be admissible, all of the requirements listed must be satisfied. *Nguyen*, 2009 WL 1873488, at *4 (citing TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(e)).

---

[6] TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(1) (Vernon 2005).

[7] *Id*. § 3(a)(2).

[8] *Id*. § 3(a)(3).

[9] *Id*. § 3(a)(4).

[10] *Id*. § 3(a)(5).

5

Nothing in Section 5 of article 38.22 prevents the admission of a statement made by an accused that is the "*res gestae of the arrest* or of the offense, or of *a statement that does not stem from custodial interrogation*, or of a *voluntary statement*, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness . . . ." *Nguyen,* 2009 WL 1873788, at *4. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 5 (emphasis added). "A res gestae statement is a statement made in response to a startling event, spontaneously or impulsively, without time for reflection or contrivance." *Smith v. State*, 737 S.W.2d 933, 940 (Tex. App.–Dallas 1987, pet. ref'd) (citing *Graham v. State*, 486 S.W.2d 92, 94-95 (Tex. Crim. App. 1972)). An arrest may be such a startling event. If either the "custodial" or the "interrogation" predicates are not met, article 38.22 does not apply. *Turner v. State*, 252 S.W.2d 571, 583 (Tex. App.–Houston [14th Dist.] 2008, pet ref'd.). Here, prior to making any oral statements, Scott was arrested for tampering with evidence. Thus, for purposes of article 38.22, he was "in custody" when he made the oral statements. *See id.*

However, the mere fact that a defendant is in custody does not automatically determine that any conversation between law enforcement personnel and an accused will constitute custodial interrogation requiring a statutory warning. *Cruse v. State*, 882 S.W.2d 50, 51 (Tex. App.–Houston [14th Dist.] 1994, no pet.). Thus, the issue is whether Scott was impermissibly interrogated in violation of article 38.22.

*Miranda* applies whenever a person in custody is subjected to either express questioning or its functional equivalent. *Rhode Island v. Innis*, 446 U.S. 291, 300-31 (1980). The term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an

6

incriminating response from the suspect. *Id*. at 301-02 (footnotes omitted). In this case, Scott's oral statements fall into two categories: those made in response to interrogation and those not made in response to interrogation.

*2. Statements Not Made in Response to Interrogation.*

With respect to the statements Scott made that were not in response to any interrogation, the evidence showed that after Trooper Chauvin pulled Scott from the vehicle and handcuffed him, he spontaneously made an inaudible remark. When Trooper Mena was asked about the remark, Mena said "Everything in there is mine." Because the arrest was a startling event and Scott's statement was immediate and spontaneous, the statement was admissible as a res gestae statement. *See Smith*, 737 S.W.2d at 940 (stating that defendant made admissible res gestae statement when arrested while about to freebase cocaine). Additionally, because the videotape reflects that no one at the scene, or at the DPS station asked Scott any questions prior to his making the remarks, they were admissible as volunteered statements. *See Stevens*, 671 S.W.2d at 520 (holding that defendant made an admissible voluntary statement when in custody but not in response to interrogation). Thus, the trial court did not abuse its discretion in admitting these statements into evidence.

*3. Statements Made in Response to Custodial Interrogation.*

We next address those statements made by Scott in response to his custodial interrogation. Scott made two statements while in custody: he responded to a question about the whereabouts of his identification and he responded to a question about how much money he had on his person. With respect to the first statement, because questions by a custodial officer concerning a defendant's name, address, telephone number, and place of employment are the types of inquiries normally attendant to arrest and custody,

7

they are not interrogation protected by the Fifth Amendment to the United States Constitution. *Sims v. State*, 735 S.W.2d 913, 917 (Tex. App.–Dallas 1987, pet. ref'd). Accordingly, no Fifth Amendment violation is shown by the asking of this question. *See id*.

However, the trooper's second question to Scott about how much money he had on his person went beyond the scope of the sort of question normally attending arrest and custody. The question constituted custodial interrogation because it was one that law enforcement should know is "reasonably likely to elicit an incriminating response. . . ." *Innis*, 446 U.S. at 300. Accordingly, we hold that the trial court abused its discretion in admitting into evidence that portion of the videotape that included this question and Scott's response to it. *See Branch v. State*, 932 S.W.2d 577, 581 (Tex. App.–Tyler 1995, no pet.) (holding that the officer, who before reading a DWI suspect the *Miranda* warnings, asked the suspect where he was going, when and what he had last eaten, and whether he had drunk alcoholic beverages "went beyond the scope of that normally attending arrest and custody and amounted to custodial interrogation because the questions asked 'were reasonably likely to elicit an incriminating response'") (quoting *Jones v. State*, 795 S.W.2d 171, 174 (Tex. Crim. App. 1990)).

### 4. Harm Analysis

Having found error, we must conduct a harm analysis to determine whether the error requires reversal. TEX. R. APP. P. 44.2. Here, since Scott was not Mirandized prior to answering the trooper's question about how much money he had, the error is constitutional.[11] *See* TEX. R. APP. P. 44.2(a); *Akins v. State*, 202 S.W.3d 879, 891-92 (Tex.

---

[11]Rule 44.2(a) provides:

*Constitutional Error.* If the appellate record in a criminal case reveals constitutional error that

8

App.–Fort Worth 2006, pet. ref'd).

In determining whether constitutional error in the admission of evidence is harmless, we look to the following factors:

(1) the importance of the evidence to the State's case;

(2) whether the evidence was cumulative of other evidence;

(3) the presence or absence of other evidence corroborating or contradicting the evidence on material points;

(4) the overall strength of the State's case; and

(5) any other factor, as revealed by the record, that may shed light on the probable impact of the error on the minds of the average juror.

*Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007). The question for the reviewing court is whether the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at its verdict—in other words, whether the error adversely affected "the integrity of the process leading to the conviction." *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007) (quoting *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989)). In reaching this decision, the reviewing court may also consider:

(1) the source and nature of the error;

(2) to what extent, if any, the State emphasized the error; and

(3) how the jury may have considered the erroneously admitted evidence to be compared to the balance of the evidence with respect to the element or defensive issue to which it is relevant.

*Id.* A constitutional error does not contribute to the conviction or punishment if the jury's verdict would have been the same even if the erroneous evidence had not been admitted.

---

is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

TEX. R. APP. P. 44.2(a).

*Clay*, 240 S.W.3d at 904.

Applying these factors, we believe the trial court's erroneous admission of the statement is not harmful error. The record reflects that Scott stated that he had about $1,000 on him. Trooper Mena testified that Scott said that "Everything in there is mine." Troopers Mena and Chauvin each testified that they found codeine and Xanax in the Honda. The State made no reference to this statement to the jury, either in voir dire or in its opening or closing remarks. Moreover, nothing in the record shows that the jury placed any particular weight on the statement during its deliberations. And, the prosecutor made no mention of this statement during his closing argument.

In summary, the importance of the complained-of evidence was minimal, the strength of the State's case was great, and the prosecutor did not emphasize the statement. Reviewing the evidence in light of the factors suggested in *Clay* and *Scott*, we conclude that the constitutional error was not a contributing factor in the jury's deliberations in arriving at its verdict and that the error did not adversely affect the integrity of the process leading to the conviction. *See* TEX. R. APP. P. 44.2(a). Issue one is overruled.

*B. Failure to File Findings of Fact and Conclusions of Law*

In his second issue, Scott argues that the trial court erred by failing to file findings of fact and conclusions of law. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon 2005). To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling (if they are not apparent from the context of the request, objection, or motion). TEX. R. APP. P. 33.1(a)(1); *Mosley v. State,* 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g). And, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's

10

refusal to rule. TEX. R. APP. P. 33.1(a)(2); *Mendez v. State,* 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). Finally, the complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited. *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004); *Bell v. State*, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996); *Rezac v. State,* 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).

In this case, Scott made no request for findings of fact and conclusions of law. In *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006), the court of criminal appeals held that upon the request of the losing party on a motion to suppress evidence, the trial court must state its essential findings. Since Scott made no such request, either at the suppression hearing or in a subsequent motion, he has failed to preserve any complaint for our review. *See* TEX. R. APP. P. 33.1; *See Cullen*, 195 S.W.3d at 699; *see also Parnell v. State*, No. 2-08-001-CR, 2009 WL 806899, at *4 (Tex. App.–Fort Worth Mar. 26, 2009, no pet. h.) (per curiam) (mem. op., not designated for publication) (holding that accused, who argued on appeal that the trial court was required to make written findings of fact and conclusions of law and who made no request to the trial court for such findings, either at the pretrial [suppression] hearing or in a subsequent motion, . . . failed to preserve any complaint for appellate review). Accordingly, we hold that Scott has failed to preserve this complaint for our review, and overrule issue two.

*C. Sufficiency Of The Evidence*

In his third, fourth, and fifth issues, Scott argues that the evidence is legally and factually insufficient to support his conviction for the three offenses for which he was convicted: possession with intent to deliver Xanax, possession of codeine, and tampering with evidence.

The standards of review applicable to issues involving the legal and factual sufficiency of the evidence are well settled and need not be repeated. Instead, we refer the parties to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) and *Williams v. State*, 270 S.W.3d 140, 142 (Tex. Crim. App. 2008) for the legal sufficiency standard and to *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009) and *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006) for the factual sufficiency standard.

*1. Possession with Intent to Deliver Xanax*

To establish that Scott possessed Xanax, the State had to prove that he: (1) exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. *Evans v. State,* 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). The evidence must establish that the defendant's connection with the drugs was more than fortuitous. *Id*. Although mere presence at the location where drugs are found is insufficient by itself to establish actual care, custody, or control of the drugs, presence or proximity, when combined with other direct or circumstantial evidence, may be sufficient to establish the element of possession beyond a reasonable doubt. *Id*. The element of intent to deliver may be proved by "circumstantial evidence, including evidence concerning an accused's possession of the contraband." *Utomi v. State*, 243 S.W.3d 75, 82 (Tex. App.–Houston [1st Dist.] 2007, pet. ref'd); *Mack v. State*, 859 S.W.2d 526, 528 (Tex. App.–Houston [1st Dist.] 1993, no pet.). An oral expression of intent is not required. *Utomi*, 243 S.W.3d at 82. An appellate court may infer an intent to deliver from the quantity of drugs possessed and from the manner in which they are packaged. *Guy v. State,* 160 S.W.3d 606, 613-14 (Tex. App.–Fort Worth 2005, pet. ref'd). Courts have considered other factors in determining intent to deliver, including: (1) the nature of the location where the accused was arrested; (2) the manner of packaging of the drugs; and

(3) the accused's status as a drug user. *Id*.

Several factors link Scott to the Xanax. While at the scene of the stop, he told Trooper Mena that "Everything in there [was] is mine." An affirmative statement by the accused connects the accused to the contraband. *Cole v. State*, 194 S.W.3d 538, 549 (Tex. App. Houston [1st Dist.] 2006, pet. ref'd) (citing *Gilbert v. State*, 874 S.W.2d 290, 298 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd)). Scott gave a false name to Trooper Mena. *See Hargrove v. State*, 211 S.W.3d 379, 387 (Tex. App.–San Antonio 2006, pet. ref'd) (stating that defendant gave false name, which indicated consciousness of guilt). The Xanax pills were found in a canister, which was inside the Honda's trunk. *See Cole,* 194 S.W.3d at 548 (holding that a factor that may help establish an affirmative link to contraband is "the place where the contraband was found was enclosed") (citing *Gilbert*, 874 S.W.2d at 298). The Honda's registration form showed that Scott and Holly owned the car. *Lassaint v. State,* 79 S.W.3d 736, 740 (Tex. App.–Corpus Christi 2002, no pet.) (concluding that a factor that may help establish an affirmative link to contraband is that the accused "had the right to possess the place where the contraband was found").

One thousand three hundred eighty Xanax pills were recovered from the Honda. The pills were not in prescription bottles—they were inside a canister that had a false bottom. Pete Luna, a sergeant investigator assigned to the DPS narcotics service, testified that this canister was typically used for "the concealment of narcotics." He stated it is common for drug dealers to buy in bulk and that individual Xanax pills sell for between two to four dollars each. Luna said that a drug dealer, when buying Xanax, would pay a lower price, between $1.20 and $1.75 per pill, because the more quantity of pills that a dealer buys, the better the price. He said that 1,200 to 1,400 Xanax pills would sell "very quickly." The vehicle was stopped while traveling from Houston to Corpus Christi. Sergeant Luna

testified that with respect to narcotics trafficking in Xanax, Houston is a "hub" "because of the number of pharmacies" there. He testified that U.S. Highway 59 is a drug corridor for Xanax. Additionally, Trooper Chauvin found a marihuana cigar in Scott's right shoe, and he smelled the odor of codeine in Scott's styrofoam cup. Scott testified that he had smoked marihuana on the day of the stop. Trooper Chauvin testified that it is "fairly common" for a person to traffic in one substance but personally use a different one. He also stated that it would be "normal" for someone to keep drugs that they intend to sell somewhere other than on their person.

### 2. Possession of Codeine

Several factors link Scott to the codeine. While at the scene of the stop, as previously discussed, Scott told Trooper Mena that "Everything in there is mine." An affirmative statement by the accused connects the accused to the contraband. *Cole,* 194 S.W.3d at 549 (citing *Gilbert*, 874 S.W.2d at 298). Scott gave a false name to Trooper Mena. A three-quarters-full bottle of cream soda, which contained codeine, was found next to Scott's right leg on the Honda's seat. *See Cole*, 194 S.W.3d at 548 (stating that factors that may help establish an affirmative link to contraband are that "the contraband was in plain view," "the contraband was accessible to the accused," and "the contraband was found on the same side of the car as where the accused was sitting") (citing *Gilbert*, 874 S.W.2d at 298). A DPS forensic scientist, who tested the contents of the cream soda bottle, testified that it contained 568.28 grams of codeine. *See Cole*, 194 S.W.3d at 549 (citing *Roberson v. State,* 80 S.W.3d 730, 740 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd)).

### 3. Tampering With Physical Evidence

In order to convict Scott of the offense of tampering with physical evidence, the

State had to prove that: (1) knowing that an investigation or official proceeding is pending or in progress; (2) Scott altered, destroyed, or concealed any record, document, or thing; and (3) with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding. *Williams*, 270 S.W.3d at 142 (citing TEX. PENAL CODE ANN. § 37.09(a)(1)). The three elements of section 37.09(a)(1) include two different culpable mental states—knowledge and intent. *Id*. The statute requires the knowledge of an investigation and the intent to impair a thing's availability as evidence." *Id*. This crime envisions an offender who intends for, but is not necessarily aware of, the impairment of something's role as evidence in the investigation. *Id*. at 244.

When Trooper Mena approached the Honda, he smelled the odor of burnt marihuana coming from the car. The evidence also showed that a cream soda bottle containing codeine was inside the car. When Fuller got out of the car, he was holding a Styrofoam cup. Trooper Chauvin took the cup from him and detected the odor of codeine in the cup. Trooper Chauvin testified that after he detected the odor of codeine in the cup, he walked back towards Trooper Mena and saw "that the [Honda's] back passenger door was opened and was beginning to close, and saw Scott empty a Styrofoam cup. Trooper Chauvin testified that after Scott poured out the liquid, he saw that the ground around the car door was wet, and the block panel and the carpet and back seat had red liquid. Trooper Chauvin testified that he smelled Scott's cup and detected "the odor of codeine coming from it, what was left inside of it."

We hold that upon application of the appropriate standards, the evidence is both legally and factually sufficient to support Scott's convictions of possession with intent to deliver Xanax, possession of codeine, and tampering with physical evidence. Issue five is overruled.

*D. Admission of Sergeant Luna's Testimony and Scott's Recorded Telephone Conversations*

By his sixth issue, Scott argues that the trial court erred by admitting the recordings of his telephone conversations made while in jail awaiting trial into evidence. By this same issue, he argues that the trial court erred by admitting into evidence Sergeant Luna's testimony, which interpreted these telephone conversations.

During Scott's incarceration, he made several telephone calls, using the telephones provided for the jail's inmates. These telephone conversations were recorded and, over defense counsel's objection, admitted into evidence during the State's case-in-chief. Scott argues that the recordings were "largely incomprehensible and thus inadmissible pursuant to Art. 38.22." Since Scott engaged in the telephone conversations while in jail, he made them while in custody. Because Scott's telephone conversations did not result from interrogation, article 38.22 does not apply. *See id*.

Scott also argues that the recordings were irrelevant to the events in question, and that the trial court erred in admitting Sgt. Luna's testimony interpreting them. To preserve an issue for appellate review, "the brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). "An argument that fails to cite supporting authority presents nothing for review." *Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000) (citing *McFarland v. State*, 928 S.W.2d 482, 512 (Tex. Crim. App. 1996)); *see Dunklin v. State*, 194 S.W.3d 14, 23 (Tex. App.–Tyler 2006, no pet.). Because Scott has failed to cite supporting authority for these arguments, the arguments are inadequately briefed and present nothing for review. *See* TEX. R. APP. P. 38.1(i); *Rocha,* 16 S.W.3d at 20. Issue six is overruled.

## IV. Conclusion

We affirm the trial court's judgments.

ROSE VELA
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and
filed this13th day of August, 2009.