Larry B. VERA, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–84–00477–CR.

Court of Appeals of Texas,
San Antonio.

Feb. 12, 1986.

Rehearing Denied May 5, 1986.

J. Randall Keltner, San Antonio, for appellant.

Sam Millsap, Jr., Edwin E. Springer, Ann Marie Cerda Aaron, Edward Shaughnessy, III, Crim. Dist. Attys., San Antonio, for appellee.

Before BUTTS, CANTU and REEVES, JJ.

## OPINION

REEVES, Justice.

This is an appeal from a conviction for aggravated sexual assault, wherein the appellant, Larry B. Vera, was assessed punishment at twenty (20) years' confinement at the Texas Department of Corrections.

Appellant asserts in his first ground of error that the evidence is insufficient to support a conviction, specifically, that the evidence failed to prove the element of vaginal penetration.

When reviewing a record to determine the sufficiency of the evidence, we must view the evidence in the light most favorable to the jury's verdict. *Denison v. State*, 651 S.W.2d 754 (Tex.Crim.App.1983) (*en banc*); *Mahavier v. State*, 644 S.W.2d 129 (Tex.App.—San Antonio 1982, no pet.). The jury is the sole judge of the weight of the evidence and the credibility of the witnesses. *Johnson v. State*, 571 S.W.2d 170, 173 (Tex.Crim.App.1978); *Markham v. State*, 635 S.W.2d 153 (Tex.App.—San Antonio 1982, no pet.). The conviction shall be upheld if there is any evidence in the record which, if believed, establishes the guilt of the appellant. *Combs v. State*, 643 S.W.2d 709 (Tex.Crim.App.1982) *(en banc); Bunte v. State*, 679 S.W.2d 695 (Tex.App.— San Antonio 1984, no pet.).

The complainant was eleven years old at the time of the incident. She testi-

fied that while she was at appellant's house, she used the bathroom. While her pants were down, her uncle picked her up, set her on the sink while he unzipped his pants, put her on the bathroom floor, and got on top of her. The complainant testified that she felt "something hard ... kind of on the inside" of her, and with the aid of anatomically correct dolls, she told the jury that the appellant had put his penis into her vagina. Her underwear was later found to be bloodstained.

Doctor Diana Weihs examined the complainant later that day. Doctor Weihs testified that she did not see any semen, but that she had swabbed the inside of the complainant's vagina and had sent the swab to the crime lab. The doctor stated further that she did not use a speculum to examine the area beyond the hymen because at the time of the examination, the hymen was intact, and the use of a speculum would break the hymen. Although the doctor's report indicated that no such examination had been conducted "do [sic] to lack of penetration," Doctor Weihs testified that her report was poorly worded in that regard and should have said something like "due to lack of deep penetration." Doctor Weihs further stated that her findings, even as reported, were nevertheless consistent with slight penetration by a penis, and that there was no absolutely certain method for a doctor to know whether a penis penetrated a vagina without actually witnessing the incident.

Additionally, the forensic serologist who conducted chemical analysis at the crime laboratory testified that she found evidence of semen on the swab from the vagina of the complainant, as well as on the underwear of the complainant.

Based on this medical evidence and on the complainant's testimony, we find that there was sufficient evidence on which a jury could have based a conviction.

Ground of error one is overruled.

Appellant's second ground of error is that the police officer who heard the complaint should not have been allowed to testify to what the complainant told her. The State asserts that the officer's testimony was admissible as *res gestae* of the offense. We cannot agree.

The complainant's mother testified that on March 20, 1984, at about 11:30 a.m., she sent her daughter, the complainant, to the appellant's house to have the complainant's uncle, the appellant, sharpen some knives. At approximately 11:35 a.m., Josie Molina sent another daughter, Yvette, to the same house with an additional knife. Yvette testified that when she arrived, she spoke with appellant's three-year-old daughter, and left. Yvette went home, related to the mother what the three-year-old had said, and at the direction of the mother, returned to the appellant's house to wait there with her sister until the appellant sharpened the knives. The girls returned home at approximately 11:45 a.m., according to their mother's testimony.

Both Yvette and the mother stated they asked the complainant what had happened while she was with the appellant, but that the complainant in each instance responded that nothing had happened. The mother stated that at approximately 3:30, she again asked the complainant what happened. The complainant had not been crying before, but then began to cry, and still would not talk about the incident. The mother then examined the complainant's underwear, found bloodstains, but waited until the father returned from work to call the police. Officers were dispatched at 5:00 p.m. The first to arrive was Leo Alonzo, who stated that he tried, unsuccessfully, to get a statement from the complainant. The second officer, Geraldine Garcia, testified that she noticed the child was crying when she arrived at approximately 5:10 p.m. Officer Garcia also testified that, after asking the parents to leave the room, she was able to persuade the child to describe the offense. Officer Garcia's testimony was that the complainant had made the following declarations: complainant's uncle, the appellant, had "done some nasty things" to her; he had "put his male thing or his man thing in my girl thing" (complainant pointed to her genital area); "his

thing was big"; it had hurt her; she had cried; she had told him to stop; she had called for help; and no help came. Officer Garcia further testified that the complainant said, in response to Garcia's question, "How did it happen?": while she was at her uncle's house, she had gone to the bathroom; while she was there, her uncle came out from behind a curtain and got to her before she could get her pants up; and that she had been bleeding. Officer Garcia stated that after this conversation, the complainant showed the officer her underwear, and the officer saw bloodstains.

■ The rule regarding the admission of spontaneous utterances is stated in *Graham v. State*, 486 S.W.2d 92, 94–95 (Tex. Crim.App.1972):

> There must have been an exciting, emotionally stimulating or physically painful event, the admission or assertion must have been made so soon after the occurrence that the declarant is still in the emotional grip of the shocking event, and the assertion must relate to the event before evidence can be admitted under this exception.

In *Graham,* although the State developed the exciting and emotionally stimulating event, they did not establish the period of time between the event and the assertion by the declarant. The State further failed to develop the emotional state of the declarant when he made the statement. Therefore, the testimony was held inadmissible.

■ In the present case, the State established that an assault had occurred and that the child was crying when she finally made the declaration, but also established that during at least part of the interim, she had not been crying, and had twice denied the incident. The record further discloses that a period of approximately five hours had passed between the assault and the declaration, and that most of that time had

been spent out of the presence of the appellant.

■ The time element is not the controlling factor. *Mills v. State*, 626 S.W.2d 583, 585 (Tex.App.—Amarillo 1981, pet. ref'd). In that case the declarant's statement was made six to eight hours after the rape, but almost immediately after she left the presence of her assailant, and while she was still in a highly emotional state.

Neither is the fact that she first denied the incident a controlling factor. *See Ricondo v. State*, 475 S.W.2d 793 (Tex.Crim. App.1971). In that case, the declarant was responding to a deputy sheriff's questions regarding the source of his injuries. After twice saying that he fell off his bunk, he realized to whom he was talking and acknowledged that he had been beaten and by whom. The statement was held to be admissible as an excited utterance, or *res gestae* of the offense.

■ The controlling factor is whether the statement was made under circumstances that would reasonably show the declaration was the result of "impulse rather than reason and reflection." *Mills, supra* at 585–86.

The cases cited by the State as authority for the spontaneous utterance exception all involve situations in which the declaration was made very soon after the offense. The five-hour delay in the present case; the fact that the declarant had conversations with her sister, her mother, and Officer Alonzo before she made the statement to Officer Garcia; and the fact that she began crying approximately three and a half hours after the offense lead us to believe that the declaration was not a spontaneous utterance resulting from impulse. The declarant had an opportunity for reflection and deliberation.

We therefore hold that the statements the complainant made to Officer Garcia were hearsay and inadmissible under the spontaneous utterance exception.[1]

---

1. The dissent asserts that appellant waived objection to hearsay by Officer Garcia by asking

the officer, on recross examination the following question

■ Furthermore, only part of the complainant's declaration was admissible as outcry. It is true that outcry is "admissible in the State's case in chief as direct evidence of that complaint and this is so without regard to the spontaneity thereof." *King v. State*, 631 S.W.2d 486, 491 (Tex. Crim.App.1982). The court explained:

While this may seem somewhat inconsistent with the usual rule that no witness or party may be thus bolstered up, by proof of prior consistent statements, before the opponent has attacked him by impeaching evidence, the exception in this case is warranted by the usually strong popular aspersion which would be cast upon the complainant by failure to complain in cases of rape.

■ Outcry is not admissible, however, to "prove the actual details of the sexual attack or even that the sexual attack actually occurred." *Brown v. State*, 649 S.W.2d 160, 162 (Tex.App.—Austin 1983, no pet.). The details of the statement made by the complainant cannot, generally, be given in evidence; the State is confined to proof of the mere fact that the complaint was made unless the complaint meets the spontaneous utterance exception to the hearsay rule. *See* 18 Tex.Jur.3d *Criminal Law* § 86 (1982).

■ Consequently, we hold that Officer Garcia's testimony in this case should have been limited to the bare fact of the complaint. In other words, the officer should have been allowed to state that the complainant told her that someone had "put his man thing or his male thing into my girl thing," and that the officer had seen the bloodstains but the remainder of the officer's testimony, as to who the assailant was, or how, where, or when the attack occurred, was inadmissible.[2]

Appellant's second ground of error is sustained.

In his third ground of error, appellant claims the trial court erred in allowing the State to improperly rehabilitate and elicit prejudicial evidence by leading questions of the witness Diana Weihs.

The specific question to which appellant refers, and the appellant's objection are as follows:

MR. SPRINGER: Can you state whether or not the best answer that you can give is, it is medically consistent with a penis having penetrated the vagina, if you have not seen the act itself?

MR. KELTNER: Objection.

THE COURT: Overruled.

MR. SPRINGER: Is that the best answer you can give?

MR. KELTNER: Could I have a ruling Judge?

THE COURT: Overruled.

THE WITNESS: Yes, Sir.

The objection lodged by the appellant's trial counsel was nothing more than a general objection that failed to inform the trial court of the basis of the complaint; as a result, nothing is preserved for review. *Lewis v. State*, 664 S.W.2d 345, 349 (Tex. Crim.App.1984) *(en banc)*.

Appellant further contends that such a statement is the only statement in the record which tends to prove vaginal penetration, but that contention disregards the complainant's testimony and that of the forensic serologist. The complainant demonstrated with the dolls that the appellant

"You stated in your report that Yvonne's mother stated ... that Yvonne had told her and in turn she told you that Larry had done something nasty to her, is that correct, and she in turn told you?"

The defense attorney revealed by further questioning that the purpose of that question was to emphasize the hearsay nature of the report and to simultaneously impeach the mother who had testified that she had been unable to get Yvonne to discuss the incident. It certainly did not rise to a waiver of his prior objection.

2. A new evidentiary rule, effective September 1, 1985, provides that, subject to notice to the defendant, and if a trial court finds that the statement is reliable, a child/victim's statement, "made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense," is not inadmissible because of the hearsay rule. TEX.CODE CRIM.PROC.ANN. art. 38.072, § 2(a)(2) (Vernon Supp.1985).

put his penis into her vagina, and the serologist found evidence of spermatozoa on the swab from the vagina of the complainant. There was abundant evidence of vaginal penetration aside from the doctor's testimony.

Ground of error three is overruled.

Appellant complains in his fourth ground of error that the court erroneously allowed the State to improperly rehabilitate and elicit prejudicial evidence by leading the complainant.

 The appellant contends that the appellant was not properly identified because the prosecutor had to ask the complainant three times who was in the bathroom with her. After she twice said that nobody was in there with her, the prosecutor asked if her uncle Larry was in there, and the complainant said "Yes." The trial court apparently believed that the child simply misunderstood the question. "The asking of leading questions is seldom a ground for reversal (especially where a child is testifying.)" *Uhl v. State*, 479 S.W.2d 55, 57 (Tex.Crim.App.1972). The decision whether to allow a witness to answer a leading question is within the discretion of the trial court. *Hernandez v. State*, 643 S.W.2d 397, 400 (Tex.Crim.App. 1982) *(en banc).* "Unless a defendant can show that he was unduly prejudiced by virtue of such questions, no reversal of his conviction will result." *Id.*

Appellant contends that he was unduly prejudiced by the introduction of such a statement, because without that statement, he was not identified as the actor, and cites *Sledge v. State*, 686 S.W.2d 127 (Tex.Crim. App.1984) *(en banc).* That case is distinguishable, however, because the complaining witness, during the trial, misidentified two persons other than the defendant. The record of the present case leaves no doubt that the complainant could identify the appellant, her uncle, as the assailant. The State consequently contends that the identification of the defendant was not an issue.

 The jury heard inconsistent statements from this child witness, because the judge allowed the prosecutor to lead the witness to correct her answer to a question she apparently misunderstood. The credibility of any witness and the weight given to the testimony is within the province of the jury. *See Johnson v. State, supra.* We assume the jury in the case at hand considered the inconsistencies in the child's testimony and believed her corrected answer.

Appellant's ground of error four is overruled.

Appellant's ground of error five is that the prosecutor was allowed to bolster the unimpeached testimony of the officer with the testimony of the complainant.

 " 'Bolstering' occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party." *Pless v. State*, 576 S.W.2d 83, 84 (Tex.Crim.App.1978). The *Pless* case was not a sexual assault case and did not involve an outcry witness.

This ground of error is moot in light of our ruling that the officer's testimony had been improperly admitted.

Appellant asserts in his sixth ground of error that the dolls which the prosecutor claimed were anatomically correct, in fact were not, and that their use, of no probative value, served only to inflame the jury. Appellant complains first of the use of the dolls by the complaining witness, and then of their use by the prosecutor during argument.

The trial court apparently found the dolls to be adequately representative of the human anatomy for the purposes of the demonstration. The use of anatomically correct dolls is beneficial when a child is testifying to clarify the witness' explanations and to assure a common understanding between a witness and a jury. The use of dolls is often critical when the complainant witness is very young. *See McKenzie v. State*, 617 S.W.2d 211, 214, n. 9 (Tex.Crim. App.1981).

■ We find no abuse of discretion in the use of the dolls with the young witness.

■ As to the use of the dolls during argument, appellant has offered no authority for his proposition that the use of visual aids during argument is impermissible. Furthermore, it is well settled that during jury argument a prosecutor may summarize the evidence. *See Cannon v. State*, 668 S.W.2d 401 (Tex.Crim.App.1984) *(en banc)*. The trial court has discretion to permit an attorney to use visual aids in summarizing the evidence. We have no authority on which to base a finding of abuse of discretion.

Appellant's sixth ground of error is overruled.

Appellant's final ground of error is that his objection regarding the prosecutor's comment on the defendant's failure to testify should have been sustained.

■ At the voir dire stage of these proceedings, the prosecutor commented that the State could not call the defendant to the stand.

Similar words were used in *Hill v. State*, 480 S.W.2d 670, 674 (Tex.Crim.App.1972), and were held not to be objectionable. The prosecutor in that case repeatedly stated to various jurors that he had no authority to put the defendant on the witness stand, and that he did not know whether the defense intended to put on any evidence. The prosecutor also asked several jurors if they understood that he could not call the defendant as a witness. The Court of Appeals reasoned:

> [T]he statements were made during the voir dire examination of the jurors and not during jury argument.... The record does not reflect that appellant informed the court or the prosecutor that he would not testify in the case. No motion in limine was filed. Thus, the remarks were made at a time when State's counsel had no way of knowing whether the appellant would testify or not, and cannot conclude the language used was manifestly intended or was of such a character that the jury would

naturally and necessarily take it to be a comment on the subsequent failure of the appellant to testify as to offend the statute. No error is shown in the court's refusal to grant appellant's motion for mistrial.

*Id.* at 674.

We overrule appellant's final ground of error.

The judgment of the trial court is reversed and remanded for a new trial not inconsistent with this opinion.

BUTTS, Justice, dissenting.

I respectfully dissent. The indictment in this case is based on TEX.PENAL CODE ANN. § 22.021(a)(5) (Vernon Supp.1986). The evidence shows that policewoman Garcia was the outcry witness. When the State first put her on the witness stand, she testified only to answering the police call on a rape case and transporting the child/complainant to the hospital. A hearsay objection at that time would not be well taken. When next she testified, the child had already testified rather hesitantly about the events. When Garcia was asked what the complainant told her, the defense objected, "Again, we'll object to that *as hearsay*." [The "again" referred to the previous time when Officer Garcia testified.]

There is no dispute that the testimony which followed the question was hearsay. But the next logical query in a rape case is, was the hearsay admissible or inadmissible? The objection, to go to the basic problem in a rape case, should be that the hearsay testimony was "bolstering" and therefore inadmissible, or that it was not a "spontaneous exclamation" or "res gestae" of the event, or some other specific objection. Often hearsay is admissible in rape cases; therefore, this was a general objection which preserved nothing for review. The trial court correctly overruled it.

The facts are clear that the child and her younger sister returned to their home around noon following the incident. The younger sister had reported something to

her mother, and the mother attempted to question the complainant, but she would not say anything. Finally the mother discovered the bloodstained panties and again attempted to get information from the child, but without success. The father was summoned from work, and it was his decision to call the police. The child cried, but she was reluctant to talk to her parents. This is understandable since appellant is the brother of the child's mother.

When Officer Garcia arrived with a male police officer, the child refused to talk to the man and chose to talk to the woman. The parents were sent from the room, and the child still cried, but she revealed the story to the policewoman.

In *King v. State*, 631 S.W.2d 486, 491 (Tex.Crim.App.1982) the court wrote,

> [I]t is a well recognized exception to the general prohibition against hearsay evidence, that statements made while in the grip of violent emotion, excitement or pain, and which relate to the exciting event, are admissible under the rationale that the capacity for reflection necessary to the fabrication of a falsehood is lost. (Citations omitted)

Immediately after policewoman Garcia heard the story and saw the bloodstained panties, she removed the child to the hospital. There it was determined that some lacerations were located in the area around the vagina, and the bloodstains came from those. The child stated she was hurt by appellant. To say that this eleven year old child made these statements to the officer based on reason and reflection is not realistic. Further, the five-hour delay in telling what had transpired with her uncle did not prohibit the use of the res gestae exception to the hearsay rule in this case.

It is also noteworthy that on cross-examination by the defense, policewoman Garcia was asked whether the child had told her that appellant "had done something nasty" to her. This was recitation of the same statement that appellant calls objectionable as hearsay on appeal. The error, if any, in its former admission was thus obviated by the defense.

I would hold the objection to be a general one, not going to any particular reason for excluding the testimony. Moreover it was not urged in a timely manner since the one objection came before the answers of the witness and not after. More importantly, I would hold the statements were spontaneous exclamations (res gestae of the event) and, as such, were admissible, even had there been a specific objection. Therefore, I dissent.