IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1057-03






ALEX APOLINAR, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIRST COURT OF APPEALS


HARRIS COUNTY





 Price, J., delivered the opinion for a unanimous Court.


O P I N I O N 




 During the appellant's trial for aggravated robbery, the trial court admitted a
hearsay statement made by the victim four days after the attack. We granted review to
determine whether the victim's hearsay statement qualifies as an excited utterance. We
conclude that it does because a reasonable trial judge could have concluded that the
victim was still under the influence of the startling event--the robbery--when he made
the statement.

I. Facts and Procedural History


 Pelagio Jimenez was attacked and robbed by two assailants on a Friday. During
the attack, he disarmed the two attackers and stabbed them both. Albert Thompson, a
man whose patio was about 200 feet away from the scene, saw the attack and called the
police.

 The police arrived a few moments later. One of the officers spoke to Jimenez in
Spanish. The officer was able to discern two words in Spanish that Jimenez said: knife
and two. Jimenez spoke a particular dialect of Filipino and a small amount of Spanish,
but could not understand or speak English.

 Jimenez was taken to the hospital, where a staff member called his daughter, Juliet
Ralph. She went to the hospital, but was unable to see or speak with her father because
he was in surgery. Hospital staff members told Ralph that they could not understand what
Jimenez had been saying when he came into the emergency room. 

 Ralph said that she was not able to speak with her father until Tuesday because
after he was out of surgery he was heavily medicated, unconscious, or incoherent. (1) On
Tuesday, Jimenez was awake and alert. When Ralph asked Jimenez what had happened
to him, Jimenez responded that "they robbed me again." Ralph testified that he was "kind
of mad" and that he was excited because he had gotten even with his attackers. Jimenez
spoke in a loud voice and gestured with his hands. Ralph explained that her father is
ordinarily a calm person and that it was unusual for him to be so upset. During her
testimony, Ralph repeated Jimenez's statement over the appellant's objection. (2)

 On direct appeal, the appellant complained that the trial court erred in admitting
the hearsay statement. The Court of Appeals held that the trial court did not abuse its
discretion. (3) The Court concluded that, although continuity of excitement from the
startling event until the statement is made is one way to assure the reliability of a hearsay
statement, it is not the only way. Jimenez's statement could reasonably have been
considered an excited utterance because he had not had the opportunity to reflect or
fabricate while he was unconscious.

 In a dissent from the denial of en banc review, Justice Jennings argued that the
Court of Appeals's holding is inconsistent with our holding in Zuliani v. State. (4) The
dissent states that the Court of Appeals's reliance on unconsciousness as a substitute for
continuous excitement "logically precludes the possibility that his statements were 'made
while [he] was under the stress'" of the attack. (5)

 We granted review to determine whether the Court of Appeals erred in holding
that a hearsay statement made four days after a startling event could be admitted as an
excited utterance. We will affirm because, under the unusual circumstances of this case,
the trial court could have reasonably concluded that Jimenez was still under the influence
of the attack and that he was incapable of reflection or fabrication.

II. The Law


 We review a trial court's decision to admit evidence over objection under an abuse
of discretion standard and will not reverse that decision absent a clear abuse of
discretion. (6) The trial court abuses its discretion when the decision lies outside the zone of
reasonable disagreement. (7)

 Hearsay statements are generally not admissible unless the statement falls within a
recognized exception to the hearsay rule. (8) One such exception is the excited utterance
exception. An excited utterance is "[a] statement relating to a startling event or condition
made while the declarant was under the stress of excitement caused by the event or
condition." (9) The exception is based on the assumption that the declarant is not, at the
time of the statement, capable of the kind of reflection that would enable him to fabricate
information. (10)

 To determine whether a statement is an excited utterance, trial courts should
determine "whether the declarant was still dominated by the emotions, excitement, fear,
or pain of the event or condition" when the statement is made. (11) Factors that the trial
court may consider include the length of time between the occurrence and the statement,
the nature of the declarant, whether the statement is made in response to a question, and
whether the statement is self-serving. (12)

III. Arguments and Analysis


 The appellant argues that the Court of Appeals erred in affirming the trial court's
admission of the statement. He focuses on two points: one legal and one factual. First,
he argues that the state of excitement must be continuous during the period between the
startling event and the statement. Next, he argues that, assuming that unconsciousness
may be a substitute for continuous excitement, Jimenez was not unconscious during the
entire period from when he was attacked until he gave the statement.

A. Must the State of Excitement Be Continuous?


 First, the appellant claims that the state of excitement must be continuous. In
support of this claim, he cites cases from Texas courts of appeals. (13) He argues that the
Court of Appeals's theory that unconsciousness may substitute for continuous stress of
excitement has not been recognized by other courts. 

 In response to the appellant's first point, the State claims that the cases cited by the
appellant in support of his claim are distinguishable and that there are cases in other
jurisdictions that support the Court of Appeals's holding that the unconsciousness can
support the finding that Jimenez was still dominated by the stress of the attack when he
gave the statement.

 The appellant cites four cases from Texas courts of appeals in support of his claim
that the stress from the exciting event must be continuous. We agree with the State that
these cases are distinguishable from the case before us.

 In Mosley v. State, (14) Gay v. State, (15) and Vera v. State, (16) the State sought to
introduce victim outcry statements in cases of aggravated sexual assault as excited
utterances. In Mosley, the statement came several days after Mosley molested his
daughter. During that time period, the victim was returned to her normal care-giver and
had the opportunity to reflect. (17) In Gay, the statement was made ten days after the
aggravated sexual assault. (18) In Vera, the statement was made about five hours after the
assault. (19) In each case, the courts of appeals held that the children were capable of
reflection. (20)

 Finally, in Ytuarte v. State, (21) an aggravated assault case, the State offered the
testimony of a police officer who interviewed the victim shortly after the attack. 
According to the officer, the victim had told him that Ytuarte had attacked her and
threatened to kill her while brandishing a baseball bat. The officer said that the victim
was tearful, distraught, and in a lot of pain. Before the victim had made her statement to
the officer, she had gone to the hospital alone and, after waiting some time, returned
home. Someone else took her to another hospital. After treatment and sedation, the
officer questioned her. The Court of Appeals concluded that because of the lengthy delay
and the period of time when the victim was not with her attacker, the victim had had an
opportunity to reflect. (22)

 These cases are all distinguishable from the facts of this case because the victim-declarants were awake and coherent: not unconscious, heavily medicated, or incoherent.
As a result, these cases do not support the appellant's proposition.

 More on point is Parks v. State. (23) In that case, the admission of a statement by a
declarant who had been shot was held to be an abuse of discretion because of the six-hour
delay and the fact that the victim had undergone surgery. In that case, the Court of
Appeals found that the intervening circumstances--anesthesia, surgery, being in the
recovery room--between the shooting and the statement attenuated the shock of the
shooting. (24)

 But there have been other cases in other jurisdictions where courts have found that
a period of unconsciousness or shock can support a finding that a hearsay statement was
an excited utterance. For example, in State v. Wallace, (25) the Ohio Supreme Court held
that a hearsay statement made by the victim of an attempted murder and assault about
fifteen hours after the attack was an excited utterance for purposes of Ohio's version of
the exception to the hearsay rule. During the fifteen-hour period between the attack and
the statement, the declarant had been "unconscious, with intermittent periods of
consciousness or semi-consciousness." (26) The Ohio Supreme Court said, "A period of
unconsciousness, even an extended period, does not necessarily destroy the effect of a
startling event upon the mind of the declarant for the purpose of satisfying the excited-utterance exception to the hearsay rule." (27) Ultimately, the Court decided that there was no
indication in the record that the declarant had a meaningful opportunity to reflect during
the intermittent periods of consciousness and semi-consciousness. (28)

 While intervening circumstances may diminish the stress from an exciting event,
the opposite also can be true. Each case that involves a period of unconsciousness
between the time of the startling event and the statement must be reviewed in light of the
facts and circumstances of the case. Rather than say that unconsciousness is a substitute
for continuity of the stress of the event, we conclude that the declarant's state of
consciousness is a factor to consider in the analysis. Trial courts and reviewing courts
should address this fact within the factors for a traditional analysis to determine whether a
hearsay statement falls within the excited utterance exception.

B. Must the Declarant Be Unconscious for the Entire Duration?


 In his second argument in opposition to the Court of Appeals's holding, the
appellant claims that, even if unconsciousness is not a bar to the finding that a statement
is an excited utterance, Jimenez's statement still should not have been admitted. The
appellant claims that because Jimenez was not unconscious during the entire period
between the attack and the statement, he was capable of reflection and fabrication. 

 In response to the appellant's second point, the State claims that the evidence
supports that when Ralph visited Jimenez in the hospital he was in surgery, unconscious,
heavily medicated, or incoherent until Tuesday, the day that he gave his statement. The
State also claims that this is a fact finding, and that reviewing courts should afford almost
total deference to the trial court's findings of fact. (29) 

 As in Wallace, the record in this case indicates that Jimenez was not unconscious
during the entire four day period. He spoke to hospital staff members in the emergency
room, and Ralph testified that, during the four-day period, her father was unconscious or
heavily medicated or incoherent.

 We find McCormick on Evidence to be helpful in dealing with situations in which
a long period of time has passed between the startling event and the statement. It states

 A useful rule of thumb is that where the time interval between the event and
the statement is long enough to permit reflective thought, the statement will
be excluded in the absence of some proof that the declarant did not in fact
engage in a reflective thought process. Testimony that the declarant still
appeared "nervous" or "distraught" and that there was a reasonable basis for
continuing emotional upset will often suffice. (30)

We find this persuasive, particularly because it is similar to our analysis in Zuliani. (31) In
that case, we held that a statement made twenty hours after an assault on the victim by the
defendant was an excited utterance because (1) the victim had been with her attacker
during the entire period and (2) the victim was clearly still very upset, and thus, still under
the influence of the attack. (32)

 Just as the Court did in Wallace, we conclude that the declarant need not
necessarily have been unconscious for the entire period between the startling event and
the statement, so long as the record supports the reasonable conclusion that the declarant
did not have a meaningful opportunity to reflect.

IV. Application


 We will now determine whether Jimenez was still dominated by the emotions,
excitement, fear, or pain of the attack when he made the statement by considering the
following factors: (A) the length of time between the occurrence and the statement and
the circumstances, (B) the demeanor of the declarant, (C) whether the statement was
made in response to a question, and (D) whether the statement is self-serving.

(A) Length of the Delay and the Circumstances


 Four days is a very long time between the startling event and the statement. As a
result, we must look to the record for evidence that Jimenez did not have a meaningful
opportunity to reflect. 

 Jimenez attempted to communicate with hospital staff when he was in the
emergency room before surgery. The trial court could have reasonably concluded that, in
the time between when Jimenez was stabbed in the abdomen and when he went under
anesthesia for surgery, he was still in shock and under the influence of the emotions from
the attack.

 Ralph testified that, when she arrived at the hospital on the night of the attack, her
father was in surgery. She visited him each day and found him to be unconscious, heavily
medicated, or incoherent. On Tuesday, when Ralph arrived her father was awake and
coherent. When Ralph asked him what had happened, Ralph said that her father was
animated, angry, and excited. Jimenez made hand gestures and spoke in a loud voice. As
he was talking, he drew the attention of other people in the room.

 We conclude, based on the record, that the trial court could have reasonably
concluded that Jimenez had no meaningful opportunity to reflect between the time when
he was attacked and when he gave the statement. Although the delay was long, this factor
weighs, though not strongly, in favor of admission because Jimenez did not have a
meaningful opportunity to reflect.

(B) Demeanor of the Declarant


 Ralph testified that her father was ordinarily a calm man and that it was unusual
for him to be so loud and animated. We conclude that this factor weighs in favor of
admission.

(C) Whether the Statement Was Made in Response to a Question


 The statement in this case was made in response to a question. Ralph testified that
she asked Jimenez what had happened to him. There is no indication that the question
was asked for any reason other than familial concern. And there is no indication that
Jimenez's answer was anything but a spontaneous response after becoming coherent after
a period of surgery, unconsciousness, and heavy medication. This factor weighs in favor
of admission.

(D) Whether the Statement Is Self-Serving


 We can discern no self-serving motive from the record. The appellant suggests
that Jimenez may have falsely accused the appellant to get even with him for a prior
attack. Although Ralph was not the State's last witness, she appeared near the end of the
State's case. The trial court had already heard substantial evidence from the State
indicating that the appellant had, along with another man, attacked Jimenez. Within
minutes of the arrival of the police on the scene, they found the appellant and the other
man involved in the offense. They both had stab wounds as described by one of the
witness's at the scene. The police had the two men transported to a hospital. 

 It seems more likely that Jimenez would want the actual people who attacked him
to be charged and sentenced. We can discern no self-serving motive for Jimenez to
fabricate his accusation against the appellant. This factor weighs in favor of admission.

V. Conclusion


 Having found that all of the factors weigh in favor of admission, we cannot say
that the trial court abused its discretion in admitting the statement made by Jimenez. We
affirm the judgment of the Court of Appeals.


Delivered: February 2, 2005.

Publish.
1. During the trial and before Ralph testified, Jimenez testified about his recollection of the
events on the night of the attack.
2. The appellant's objection was based solely on the general rule prohibiting the admission
of hearsay. He did not object on the basis of the confrontation clause.
3. Apolinar v. State, 106 S.W.3d 407 (Tex. App.--Houston [1st Dist.] 2003).
4. Id., at 423 (citing Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003)).
5. Id., at 424.
6. Zuliani, 97 S.W.3d at 595.
7. Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992).
8. Tex. R. Evid. 802.
9. Tex. R. Evid. 803(2).
10. Zuliani, 975 S.W.3d at 595.
11. Zuliani, 97 S.W.3d at 596 (citing McFarland v. State, 845 S.W.2d 824, 846 (Tex. Crim.
App. 1992).
12. Id., at 595-96; see also 2 John W. Strong, McCormick on Evidence § 272, at 207-08
(5th ed. 1999). 
13. Ytuarte v. State, No. 09-01-00068-CR, 2002 Tex. App. LEXIS 7494 (Tex.
App.--Beaumont 2002, pet. dism'd, untimely filed) (not designated for publication); Mosley v.
State, 960 S.W.2d 200 (Tex. App.--Corpus Christi 1997, no pet.); Gay v. State, 981 S.W.2d 864
(Tex. App.--Houston [1st Dist.] 1988, pet. ref'd); Vera v. State, 709 S.W.2d 681 (Tex.
App.--San Antonio 1986, pet. ref'd).
14. The State first attempted to offer the statement under Code of Criminal Procedure
Article 38.072. The Court of Appeals held that the State could not rely on Article 38.072
because it had not complied with the provisions of the Article.
15. Gay v. State, 981 S.W.2d 864 (Tex. App.--Houston [1st Dist.] 1998, pet. ref'd).
16. Vera, 709 S.W.2d at 683.
17. Mosley, 960 S.W.2d at 204.
18. Gay v. State, 981 S.W.2d at 867.
19. Vera, 709 S.W.2d at 683.
20. Gay v. State, 981 S.W.2d at 867; Mosley, 960 S.W.2d at 204; Vera, 709 S.W.2d at 683.
21. Ytuarte, No. 09-01-00068-CR, 2002 Tex. App. LEXIS 7494.
22. Id., at *12.
23. Parks v. State, 843 S.W.3d 693 (Tex. App.--Corpus Christi 1992, pet. ref'd).
24. Id., at 697-98.
25. State v. Wallace, 524 N.E.2d 466 (Ohio 1988). See also A.C.M. v. State, 855 So.
2d 571 (Ala. Crim. App. 2002); People v. Meras, 671 N.E.2d 746 (Ill. App. Ct. 1996);
People v. Washington, 459 P.2d 259 (Cal. 1969).
26. Wallace, 524 N.E.2d at 470.
27. Ibid.
28. Ibid.
29. For this proposition, the State cites Hernandez v. State, 957 S.W.2d 851, 852 (Tex.
Crim. App. 1998).
30. 2 John W. Strong, McCormick on Evidence § 272, at 207-08 (5th ed. 1999).
31. Zuliani, 97 S.W.3d at 596.
32. Ibid.