

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-18-00187-CR

_____

CORLES NASH, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 272nd District Court
Brazos County, Texas
Trial Court No. 17-00269-CRF-272; Honorable Travis B. Bryan III, Presiding

November 7, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Corles Nash, appeals from his conviction by jury of the second degree offense of aggravated assault with a deadly weapon[1] and the resulting court-imposed sentence of forty-five years of imprisonment.[2] Appellant challenges his conviction

---

[1] TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2019). As indicted, an offense under this section is a second degree felony. _Id._ at § 22.02(b).

[2] TEX. PENAL CODE ANN. § 12.33 (West 2019). A second degree felony is punishable by imprisonment for any term of not more than twenty years or less than two years and a fine not to exceed $10,000. The indictment here also included two enhancement allegations, one of which was found to be "true" at trial. That elevated the applicable punishment range to that of a first degree felony, allowing for imprisonment for life or any term not more than ninety-nine years or less than five years and a fine not to exceed $10,000. TEX. PENAL CODE ANN. §§ 12.32, 12.42 (West 2019).

through three issues.[3] First, Appellant contends the trial court erred in admitting hearsay evidence of the complainant's statements to a co-worker when she was available and did testify at trial. Secondly, he contends the trial court erred in admitting evidence of an extraneous offense; and, finally, he alleges the trial court erred in admitting evidence that he committed a prior assault against the complainant. We affirm the judgment as modified. TEX. R. APP. P. 43.2(b).

### BACKGROUND

Appellant was indicted for assaulting his girlfriend, Betty, by "grabbing, restraining, and hitting her head against a hard object." The indictment further alleged that he used or exhibited a knife during the assault.[4]

At the time of the assault, Appellant and Betty had been together for about two years, but the relationship was coming to an end. A deputy testified Betty provided to police a written statement about the assault and he read that statement into the record at trial. In that statement, Betty said Appellant came to her home after sending threatening text messages to her. When she let him in, he pushed her "hard" and it caused her to fall on the floor. She said it hurt her thigh and the back of her head. She said Appellant yelled at her and then "grabbed [her] by [her] right arm and pulled [her] all the way into the bedroom." He grabbed her hair and "started banging [her] head on [her] headboard several times really hard." He put her head down on the bed and she "saw he had pulled

---

[3] Originally appealed to the Tenth Court of Appeals, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. Tex. Gov't Code Ann. § 73.001 (West 2013). Should a conflict exist between precedent of the Tenth Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

[4] This case first went to trial in September 2017. It ended in a mistrial after a dispute arose between Appellant and his counsel. New counsel was appointed, and this second trial followed.

out a knife . . . ." Appellant was arrested based on the information in that written statement. At trial, the State also offered the testimony of one of Betty's co-workers, who corroborated many of the statements Betty made to the police.

Appellant did not testify at the guilt-innocence phase of trial and did not present any witnesses. The jury found Appellant guilty as charged in the indictment. The court held a punishment hearing and sentenced Appellant as noted.[5] Appellant appeals, arguing the trial court erroneously permitted Betty's hearsay statements and erroneously admitted evidence of Appellant's extraneous offenses.

### ISSUE ONE—HEARSAY

A hearsay statement is any statement of a declarant, not made while testifying at trial, which is offered into evidence to prove the truth of the matter asserted in the statement. TEX. R. EVID. 801(d). Evidentiary rules pertaining to hearsay statements are in place to exclude out-of-court statements that pose any of the four "hearsay dangers" of faulty perception, faulty memory, accidental miscommunication, or insincerity. *Fischer v. State,* 252 S.W.3d 375, 378 (Tex. Crim. App. 2008); TEX. R. EVID. 801, 802. Where these dangers are minimized, there are several exceptions to the general rule excluding hearsay statements. *See* TEX. R. EVID. 803 (setting forth twenty-four exceptions). One exception to the general rule excluding hearsay is the "excited utterance," defined as a "statement relating to a startling event or condition, made while the declarant was under the stress of the excitement that it caused." TEX. R. EVID. 803(2). The admissibility of an out-of-court statement under any of the exceptions to the general hearsay exclusion rule

---

[5] Appellant filed a motion for new trial, alleging the State failed to provide to him exculpatory information and asked for a new punishment hearing. That motion was denied. That ruling is not at issue in this appeal.

3

is a matter within the sound discretion of the trial court. *Lawton v. State,* 913 S.W.2d 542, 553 (Tex. Crim. App. 1995).

To determine whether a statement is an excited utterance, trial courts should determine "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition when the statement is made. Factors that the trial court may consider include the length of time between the occurrence and the statement, the nature of the declarant, whether the statement is made in response to a question, and whether the statement is self-serving." *Apolinar v. State,* 155 S.W.3d 184, 190 (Tex. Crim. App. 2005) (citations omitted).

Here, the State presented the testimony of Betty's co-worker, Veronica. Veronica testified Betty came into work one day with "puffy" eyes. The two went into a private room and when Veronica shut the door, Betty "started crying." Appellant objected on hearsay grounds. After some additional questioning, and Veronica's admission that Betty appeared "stressed out," Appellant again objected, citing as grounds hearsay. The court overruled that objection on the ground that the statements were "excited utterances" and exceptions to the hearsay rule. TEX. R. EVID. 803(2). Veronica was then permitted to describe for the jury what Betty told her about the assault by Appellant. Veronica testified Appellant "came to [Betty's] house and that he had assaulted her and that they -- he had gotten physical to her, threw her to the ground. Well, he threw her to the floor -- I'm sorry

-- because they were inside. Threw her to the floor. She hit her head on the wall and pulled a knife out on her and told her that he would use it on her."[6]

In Appellant's first issue, he argues Betty's statements were not admissible as an exception to the hearsay rule because they did not satisfy the requisites of an excited utterance under Rule 803(2). Appellant contends Betty's statements to Veronica were not excited utterances because she had been "away from Appellant for at least eight hours, from 6 a.m. to 2 p.m." Further, the evidence showed only that Betty was upset while talking to Veronica, not that she was dominated by the emotions of the assault to the point that she was incapable of reflection from the time of the assault to the time of the statement. Appellant also asserts Betty's statements were not spontaneous but were rather in response to the conversation with Veronica. Finally, Appellant argues Betty's statements were self-serving because she had had time to "contemplate her statements and chose to make them to a person who she knew did not approve of the relationship with Appellant." The State responds that the evidence showed the statements were excited utterances and thus, admissible as exceptions to the general rule prohibiting admission of hearsay statements. We agree the trial court could have viewed the evidence this way and thus, did not abuse its discretion in admitting the statements.

The trial court heard Veronica's testimony that Betty arrived at work with "puffy" eyes that could have been due, in Veronica's opinion, to Betty crying or not sleeping well. Veronica testified it appeared Betty might have wanted to talk to her about something. As soon as the two women were in a private room, Betty "started crying" and seemed to

---

[6] Appellant also objected on the bases of the violation of his "right to confront, cross-examine" under the Sixth and Fourteenth Amendments. The trial court overruled those objections as well; however, those rulings are not at issue on appeal.

Veronica to be "stressed out." While Appellant contends that the passage of time, from 6 a.m. to 2 p.m., between the assault and Betty's statements to Veronica was too long for the statements to satisfy the requirements of the excited utterance exception, the passage of time alone is not determinative. *Sadler v. State,* No. 10-07-00323-CR, 2009 Tex. App. LEXIS 2962, at *11-12 (Tex. App.—Waco April 29, 2009, no pet.) (mem. op., not designated for publication) (statement made ten or eleven hours after assault admissible as excited utterance); *Mayfield v. State*, No. 04-02-00635-CR, 2003 Tex. App. LEXIS 7660, at *5-6 (Tex. App.—San Antonio Sept. 3, 2003, pet. ref'd) (mem. op., not designated for publication) (statement made after ten hours was admissible). *Snellen v. State*, 923 S.W.2d 238, 242-43 (Tex. App.—Texarkana 1996, pet. ref'd) (statement made twelve to thirteen hours after the event ruled admissible). While we agree that the passage of time was fairly significant here, it was not so long of a period of time that we can say the trial court abused its discretion in determining the exception applied.

This is particularly true given that while Betty was physically separated from Appellant for that period of time, the two continued to maintain contact through a text message exchange. Because of this extended contact, we cannot agree with Appellant's comparison of the facts in this case to those in *Vera v. State,* 709 S.W.2d 681, 684 (Tex. App.—San Antonio 1986, pet. ref'd). Appellant argues that in that case, like here, several hours passed in which the victim was outside the presence of the defendant, the victim had at some point stopped crying, and had made statements to others, causing the trial court to conclude the statements at issue were not excited utterances. Appellant distinguishes the facts of this case from those in *Zuliani v. State,* 97 S.W.3d 589, 596 (Tex. Crim. App. 2003), asserting that there, some twenty hours had passed but the victim had not been apart from the defendant during that time. In this case, it is undisputed

6

Betty had been away from Appellant for around eight hours. However, during that time, the two exchanged many text messages. Those text messages, and the messages exchanged before the assault, were a large part of the trial. We cannot agree with Appellant that the physical separation between the parties alone overcame the fact that the two continued to exchange threatening text messages. Accordingly, the trial court could have reasonably seen the circumstances as being sufficient to find Betty's statements to Veronica satisfied the requirements of an excited utterance.

Based on Veronica's observations as described in open court, it appeared Betty was still very upset and under the stress of the assault by Appellant. We note also that the trial court could have found that Veronica initiated the conversation with Betty for no other reason than personal concern and that Betty's responses during that conversation were spontaneous. Nothing in the record indicates otherwise. *See Sadler,* 2009 Tex. App. LEXIS 2962, at *11-12 (similar finding). Lastly, while Appellant speculates that Betty chose to speak to Veronica, a person who had expressed disapproval of Betty's relationship with Appellant, because of some self-serving motive, the record does not support this assertion. Betty and Veronica worked together and had been friends for "a little over ten years." They socialized and discussed their romantic lives. The record shows that before the assault, Appellant and Betty exchanged several text messages. The assault occurred in the early morning hours and the threatening text messages resumed a couple of hours later. Betty went into work that afternoon and told Veronica about the assault and the text messages. We cannot say that, considering the sequence of events, the trial court erred in determining that statements Betty made to Veronica about the assault were excited utterances. Accordingly, we overrule appellant's first issue.

7

## ISSUES TWO AND THREE—EXTRANEOUS OFFENSE EVIDENCE

Evidence of other crimes, wrongs, or acts is not admissible to prove character conformity, but may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident." TEX. R. EVID. 404(b)(2). "[A] party may introduce evidence of other crimes, wrongs, or acts if such evidence logically serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact." *Martin v. State,* 173 S.W.3d 463, 466 (Tex. Crim. App. 2005); *Johnston v. State,* 145 S.W.3d 215, 220 (Tex. Crim. App. 2004). Rule 404(b) is "a rule of inclusion rather than exclusion." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009) (citation omitted). The exceptions enumerated under Rule 404(b) are "neither mutually exclusive nor collectively exhaustive." *Id.*

A trial court has wide discretion in determining whether to admit or exclude evidence of extraneous offenses. *Montgomery v. State,* 810 S.W.2d 372, 390-93 (Tex. Crim. App. 1991) (op. on reh'g). Accordingly, we review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Henley v. State,* 493 S.W.3d 77, 82-83 (Tex. Crim. App. 2016). A trial court abuses its discretion when the decision falls outside the zone of reasonable disagreement. *Id.* (citations omitted). Before a reviewing court may reverse the trial court's decision, "it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Id.* (citation omitted).

8

Here, over Appellant's objection, the trial court admitted evidence of two extraneous offenses. The first came in through text messages between Appellant and Betty. Several of the messages referred to Appellant as being on parole. Appellant asked that those messages be removed or redacted since they were a "very minor part of the message chain." The trial court overruled the objection but provided to the jury a limiting instruction at the time the evidence was offered and again in the written charge to the jury. The evidence of the second extraneous offense showed Appellant had previously assaulted Betty. Over Appellant's objection, Betty testified that on a prior date, Appellant confronted her at her home and pushed her down on her bed.

### REFERENCE TO PAROLE

One exception to Rule 404(b) allows extraneous offense evidence to be admitted if it is contextual evidence. *Wyatt v. State,* 23 S.W.3d 18, 25 (Tex. Crim. App. 2000). There are two types of contextual evidence, only one of which is at issue here; that type of evidence is evidence of other offenses connected with the primary offense, referred to as same transaction contextual evidence. *Mayes v. State,* 816 S.W.2d 79, 86-87 (Tex. Crim. App. 1991). Same transaction contextual evidence is admissible "only to the extent that it is necessary to the jury's understanding of the offense." *Wyatt,* 23 S.W.3d at 25; *Rogers v. State,* 853 S.W.2d 29, 33 (Tex. Crim. App. 1993). Extraneous acts are considered to be same transaction contextual evidence when the charged offense would make "little or no sense without also bringing in the same transaction contextual evidence." *Wyatt,* 23 S.W.3d at 25 (citations omitted). Such evidence is admissible because in relating the crime for which the defendant is on trial, it is "impracticable to avoid describing" the contextual evidence. *Mayes*, 816 S.W.2d at 86 n.4. Such evidence offers the jury information crucial to understanding the context and circumstances of

9

events that are blended or interwoven. *Davis v. State,* No. 10-07-00206-CR, 2011 Tex. App. LEXIS 835, at *24 (Tex. App.—Waco Feb. 2, 2011, pet. ref'd) (mem. op., not designated for publication) (citing *Camacho v. State,* 864 S.W.2d 524, 532 (Tex. Crim. App. 1993)).

During trial, a witness read to the jury several text messages between Appellant and Betty. Those messages were part of a long exchange between the two the night of the assault. Photographs of the text messages were also introduced into evidence. In some of the messages, Appellant referred to his parole. He mentioned completing his parole paperwork to show Betty's address as his address, his desire not to return to prison because of an issue with the address in the paperwork, and how many parole officers he had had. Appellant also said he would not go back to prison but if he did, "it's going to be for something." The messages further indicated Appellant was angry because he believed Betty was seeing someone else. The messages reflected his anger over the situation regarding his address with his parole officer. He apparently told Betty he would move in with her and changed his address with his parole officer to her address. However, he did not move in with her and remained living with another woman. Some of the messages seemed to show that he also would not move in with Betty because she was now involved with someone else. The messages referencing Appellant's parole were interspersed with the other messages regarding Betty's alleged relationship with another man and threatening messages from Appellant.

At trial, Appellant objected to the admission of those messages and argued they were not relevant, were more prejudicial than probative, and were not admissible for any of the enumerated reasons set forth in Rule 404(b). The State responded that if the

messages concerning parole were removed, the rest of the messages would not make sense. As such, the messages were part of the same transaction as the assault and were contextual evidence. After the complained-of text messages were read to the court and the court had considered the arguments of the parties, it overruled Appellant's objections and admitted the text messages. The trial court did, however, give a limiting instruction to the jury which provided, "You're instructed in reference to any references to the Defendant having been on parole, if any, that are contained in text messages, those can be considered by you only for the purpose of determining the context of the text messages and for no other purpose." The court also provided a limiting instruction in its written charge to the jury.

We agree that the trial court could have viewed the text messages containing Appellant's parole status as "blended or interwoven" with the other messages. The trial court could have reasonably determined that presentation of all of the messages were necessary for the jury to understand the events and circumstances leading to the assault. The messages offered to the jury evidence of Appellant's motive to assault Betty, namely his anger over her alleged infidelity and issues with the address in his parole paperwork. The purpose of admitting same transaction contextual evidence is to put the current offense in context. *Davis,* 2011 Tex. App. LEXIS 835, at *25 (citing *Mayes,* 816 S.W.2d at 86-87). Accordingly, we cannot find the trial court abused its discretion in admitting the evidence concerning Appellant's parole. We overrule Appellant's second issue.

Extraneous offense evidence may also be admissible to rebut defensive theories. *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008). And, in cases in which the prior relationship between the victim and the accused is a material issue, "illustrating the nature of the relationship may be the purpose for which evidence of prior bad acts will be admissible." *Garcia v. State,* 201 S.W.3d 695, 703 (Tex. Crim. App. 2006).

Betty testified to a previous assault against her by Appellant. Appellant objected and the trial court overruled the objection but gave to Appellant a "running objection to previous instances, if any." Betty then testified that she went out one night and did not come home immediately after going out. When she did come home, Appellant was outside her house in his car. She went inside and he followed her in. He followed her to her bedroom and "grabbed" her phone to see who she had been with that night. He did not have her passcode so he "pretty much pushed [her] down on [her] bed, grabbed [her], and told [her] just if I don't open the phone, then that was it." She told the jury Appellant pushed her with his hands and grabbed her neck and that she was "scared." However, she did not report the assault to police because Appellant told her "he was sorry." The two continued their relationship after this assault.

Betty's testimony as to the prior assault was first discussed before she testified. The court initially asked Appellant whether he objected to the testimony. Appellant responded, "oh, yes" but didn't specify what his objections were. After discussion of the cases relevant to Betty's testimony, Appellant objected under Rules of Evidence 401, 403, and 404(b) and also argued that a particular text message referencing the previous assault was self-serving because it was sent about six hours after the assault. The trial

court overruled the objections. When Betty testified, Appellant again objected and requested and received a running objection.

At trial, the State's theory was the text messages concerning the prior assault and Betty's testimony about that assault were admissible to rebut Appellant's theory of fabrication under 404(b), which he argued in his opening statement, and, further, to show the nature of the relationship between the parties under article 38.371. *See* Tex. R. Evid. 404(b); Tex. Code Crim. Proc. Ann. art. 38.371 (permitting evidence or testimony regarding the "nature of the relationship between the actor and the alleged victim").

On appeal, Appellant argues Betty's testimony about the prior assault lacked a time frame and described an isolated incident. He also asserts that because the prior assault is similar to the charged assault, the limited probative value was outweighed by the risk of unfair prejudice. Appellant does not address whether the evidence was admissible to rebut the defensive theory of fabrication.

As it did at trial, the State argues Betty's testimony was admissible under both article 38.371 and Rule 404(b). The State asserts that Appellant opened the door to this evidence in his opening statement when he told the jury, "the real thing [they] need[ed] to focus on [was] Betty['s] testimony" and that "she will give you a story about what happened that does not make sense." This indicated, according to the State, that the defensive theory was one of fabrication. The State contends Appellant also opened the door to the challenged testimony when he cross-examined Veronica. He asked several questions that "suggested Betty was fabricating the assault allegations as well as the evidence in this case." Further, Appellant's cross-examination of other witnesses focused on the possibility that Betty altered the text messages contained in State's exhibits 10

13

through 92. Accordingly, the State asserts Betty's testimony concerning the prior assault was admissible to rebut Appellant's defensive theory of fabrication. *See Banks v. State,* 494 S.W.3d 883, 892-93 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (admission under Rule 404(b) of prior conviction for purpose of rebutting defensive theory of fabrication of charged assault). *See also Mapolisa v. State,* No. 05-16-00711-CR, 2017 Tex. App. LEXIS 6370, at *13-14 (Tex. App.—Dallas July 11, 2017, pet. ref') (mem. op., not designated for publication) (finding evidence admissible to show nature of the relationship between defendant and victim and to rebut defensive theory that victim fabricated the assault).

The State also argues Betty's testimony about the prior assault was admissible under article 38.371 to show the nature of the relationship between Appellant and Betty. The fact that she testified to only one prior occasion without identifying when it occurred does not render the testimony inadmissible for this purpose. Under the applicable rules, the testimony was relevant to show the dynamics of Appellant and Betty's relationship and was not admitted simply to show Appellant acted in conformity with his character. *See Garcia,* 201 S.W.3d at 697-98 (evidence that the defendant "pushed [the victim] out of the car" months before he apparently killed her was admissible under Rule 404(b) to show the nature of the relationship between the defendant and victim). *See also McCleery v. State,* No. 03-17-00154-CR, 2017 Tex. App. LEXIS 9853, at *23-24 (Tex. App.—Austin Oct. 20, 2017, no pet.) (mem. op., not designated for publication) (finding trial court did not abuse its discretion when it admitted photographs because they constituted "evidence regarding the nature of the relationship between" the defendant and the victim under article 38.371). Because we cannot find the trial court abused its discretion in finding Betty's testimony concerning the prior assault was admissible to rebut a defensive theory

or, alternatively, to show the nature of the relationship between Betty and Appellant, we overrule Appellant's third issue.

### MODIFICATION OF JUDGMENT

In reviewing the appellate record, we noted a clerical error in the written judgment of conviction. The first page of the trial court's judgment reflects that punishment was assessed by the jury. However, the reporter's record shows that the trial court assessed punishment in this case.

This court has the power to modify an incorrect judgment to make the record speak the truth when we have the necessary information to do so. TEX. R. APP. P. 43.2(b); *Ramirez v. State,* 336 S.W.3d 846, 852 (Tex. App.—Amarillo 2011, pet. ref'd) (citing *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993)). Courts of appeals have the power to reform whatever the trial court could have corrected by a judgment *nunc pro tunc* where the evidence necessary to correct the judgment appears in the record. *Asberry v. State*, 813 S.W.2d 526, 529-30 (Tex. App.—Dallas 1991, pet. ref'd) (citation omitted). "The authority of an appellate court to reform incorrect judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Id.* (citations omitted). Because the record plainly shows the trial court assessed punishment, we modify the judgment to reflect that the trial court, not the jury, assessed punishment.

**CONCLUSION**

Having resolved each of Appellant's issues against him, we affirm the judgment of the trial court as modified herein.

Patrick A. Pirtle
Justice

Do not publish.